COMMONWEALTH *vs.* WILFRED A. McGRATH.

Suffolk.   November 7, 1966. — January 4, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Evidence,* Admissions and confessions, Hearsay, Evidence of identity, General objection to admission of evidence.   *Constitutional Law,* Admissions and confessions, Confrontation of witnesses.   *Federal Law.   Assault.*

Replies of the defendant in a criminal case while under arrest to questions by a police officer in the presence of one who had just made accusatory statements heard by the defendant were clearly equivocal, and with the questions were properly admitted in evidence at his trial.   [538]

Under *Johnson* v. *New Jersey,* 384 U. S. 719, the Federal Constitution did not require application of the principles set forth in *Miranda* v. *Arizona,* 384 U. S. 436, to a Massachusetts criminal case tried before the

Commonwealth *v.* McGrath.

decision in the *Miranda* case, and this court declined to so apply such principles.   [539]

The admission in evidence at a Massachusetts criminal trial of testimony by a police officer of accusatory statements made, by one who did not testify at the trial, during an interrogation of the defendant while he was under arrest did not abridge the defendant's rights under the Sixth and Fourteenth Amendments of the Federal Constitution to confront the witnesses against him where it appeared that the testimony was introduced to "give meaning and effect" to equivocal remarks by the defendant and not to show the truth of the accusatory statements; nor was the speaker of such statements a witness against the defendant within the meaning of the Sixth Amendment.   [539]

Conviction of the defendant upon indictments for assault on a woman seriously wounded by a shooting in an apartment in which she lived with the defendant was warranted by the evidence at the trial, particularly remarks of the defendant which could be considered as admissions of his guilt, corroborating evidence thereof, and admissible testimony of a police officer that a neighbor of the defendant stated that he said to the neighbor that he had "just shot" the victim.   [540]

At a criminal trial for assault on a woman in an apartment, testimony by a police officer who was in the apartment shortly after the assault that the defendant entered it, that thereupon the officer told him the victim "was in the hospital," to which the defendant made no response, and asked him his name, and that the defendant gave a name which he sometimes used but which was not his true name, was admissible to establish the identity of the person who entered the apartment, and a general exception to the testimony was overruled.   [540–541]

INDICTMENTS found and returned on May 3, 1965.

The cases were tried in the Superior Court before *Paquet,* J.   The defendant was found guilty on each indictment and alleged exceptions.

*Ronald J. Chisholm* for the defendant.

*Gerald F. Muldoon,* Assistant District Attorney, for the Commonwealth.

SPALDING, J.   In the early morning of March 31, 1965, Carla Johnson was seriously wounded by eight twenty-two calibre bullets fired from a distance of twelve to eighteen inches.   One of the bullets entered her right arm and seven entered her abdomen.   The defendant was charged with the offence in two indictments, one for assault and battery by means of a dangerous weapon, and the other for assault with intent to murder.   The jury found him guilty under both indictments.   The defendant's exceptions raise ques-

tions relating to the admission in evidence of certain testimony of two police officers, and to the denial of his motions for directed verdicts.

There was evidence of the following: The shooting occurred in an apartment in Revere where Carla and the defendant had been living together since August, 1964. The apartment was rented in the name of John Shea, a name which the defendant sometimes used. Carla testified that she had been drinking with the defendant in a Boston barroom early in the evening of March 30, but had left the defendant about 9 P.M. She said she returned home around midnight, was alone in the apartment, and did not know who shot her. A police officer first learned of the shooting when a car driven by Mrs. Joan Roy, who lived in the apartment next to the defendant's, was seen speeding on the Revere Beach Boulevard with the horn blowing. He gave chase and overtook the car. He discovered Carla Johnson lying unconscious on the floor of the back seat. An ambulance was called and Carla was taken to a hospital. Police officers went to the defendant's apartment and found a twenty-two calibre revolver containing eight discharged cartridges. There were bullet holes in the wall and sofa, a spent twenty-two calibre bullet on the floor, and a box of twenty-two calibre cartridges in a drawer. The officers also found a mop which was later determined to have human blood on it. The defendant entered the apartment at about 4 A.M. wearing a white "T-shirt" and dark trousers, and was subsequently taken to the Revere police station for questioning.

Officer Parvin and Lieutenant Hurley testified to the defendant's entrance into the apartment and his subsequent interrogation. The defendant contends that certain portions of each policeman's testimony were not admissible in evidence, and that the Commonwealth did not therefore produce sufficient evidence to warrant the guilty verdicts.

1. Lieutenant Hurley testified as follows: Several hours after the shooting he interrogated the defendant, who, though not yet booked, was under technical arrest. Hurley

Commonwealth *v.* McGrath.

first advised the defendant of his rights to remain silent and to "contact counsel," which the defendant said he understood. Hurley then brought Mrs. Roy into the room.[1] Mrs. Roy said she was a neighbor of the defendant, and the defendant confirmed this fact. In the course of questioning by Hurley, in the defendant's presence, Mrs. Roy said that she had been at a barroom early that morning when the defendant came in and "pulled . . . [her] off the . . . [bar] stool and out the door." She said they drove back to the apartment in Revere which Carla Johnson and the defendant had been sharing and that Carla was outside lying on the ground. The defendant "picked her up and put her in the back seat of . . . [Mrs. Roy's] car. . . . He said, 'Get her to the hospital. I just shot her.'" After eliciting these statements from Mrs. Roy, Hurley turned to the defendant and asked him, "Have you anything to say now?" A. "I got nothing to say. I told you where I was except thanks for the coffee. . . ." Q. "Did you hear what she had to say?" A. "Yup, I listened." Q. "Is she lying?" A. "As far as I know she is." Q. "Why would she lie?" A. "I don't know. I ain't saying no more. You're already convinced I done it so lock me up and get it over with." Q. "Why would Mrs. Roy tell us a story like this if it were not true?" A. "I don't know." Q. "If you tell the truth for a change it will be better in the long run for you." A. "Maybe Carla will tell you." Q. "You don't think Carla will talk?" A. "I know she won't." Q. "Who else could have shot her?" A. "Maybe a boyfriend. She has lots of them." Q. "You are the only boyfriend we know of." A. "May be." After a number of questions relative to the defendant's activities on the night of the shooting, Hurley asked, "What would make a person shoot a girl like this?" A. "If she dies it doesn't make any difference. I love the girl. No matter what I'm going to jail so let's let the Court decide. I'm sick to death that she's in the hospital but

---

[1] Lieutenant Hurley testified that since March 31, 1965, he had been unable to locate Mrs. Roy; she did not testify.

there is nothing I can do to change that now." Q. "Well, why don't you bail out now and get it off your chest?" A. "I can't bail out. But I never say anything to cops, and I don't want to say anything now. Let Carla tell you about it if she wants to. I'm not going to say anything. If she dies I'd just as soon go myself. I'd rather be dead than live without her." Hurley, indicating blood stains on the defendant's trousers, asked, ". . . How did you get the blood on your pants?" A. "I could have pricked my finger and, look here where I cut myself shaving." Q. "You wouldn't leave that amount of blood on your pants if you pricked your finger nor if you cut yourself shaving, would you?" A. "Maybe I have the same type blood as Carla so that wouldn't prove anything." Q. "I didn't say it was Carla's blood, you did." A. "I don't want to be wise, I don't want to say anything. I refuse to answer any more questions." The defendant excepted generally to the admission in evidence of each of Hurley's questions to each of Mrs. Roy's statements and the defendant's replies thereto.

Hurley's testimony was admissible only if the defendant, having heard Mrs. Roy's accusatory statements, replied equivocally. The rule is that "When a defendant while under arrest is charged with a crime by an accusation made in his presence, and makes an equivocal reply or one susceptible of being interpreted as an admission or one not likely to be made by an innocent man, the question or statement and the answer or comment are admissible." *Commonwealth* v. *Madeiros,* 255 Mass. 304, 313. *Commonwealth* v. *Hamel,* 264 Mass. 564, 569. *Commonwealth* v. *Graham,* 279 Mass. 466, 468. *Commonwealth* v. *Valcourt,* 333 Mass. 706, 716. *Commonwealth* v. *Machado,* 339 Mass. 713, 715–716. The answer is admitted as an admission and the accusatory statement is admitted to "give meaning and effect" to the answer. See *Commonwealth* v. *Kenney,* 12 Met. 235, 237; *Commonwealth* v. *Anderson,* 220 Mass. 142, 145. There is no doubt that the defendant, having heard Mrs. Roy's accusatory statements, replied equivocally. Several of these remarks, particularly when considered in

the aggregate, could be fairly interpreted as an admission.

The defendant contends, however, that each of the equivocal remarks was constitutionally inadmissible. His contention is based upon the recent decision in *Miranda* v. *Arizona,* 384 U. S. 436, which held, at pp. 473–474, that "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." But the contention cannot prevail. The case at bar was tried in June, 1965, and the *Miranda* case was not decided until June, 1966. In *Johnson* v. *New Jersey,* 384 U. S. 719, decided a week after the *Miranda* decision, it was held that the *Miranda* principles need not be applied to cases tried before that decision. It is, of course, within our power to give the *Miranda* case greater retrospectivity than the Supreme Court in the *Johnson* case has required, and we have been urged to do so here. But that question has been dealt with in three very recent decisions of this court and it has been decided that the *Miranda* principles are not to be applied to cases tried prior to that decision. *Commonwealth* v. *Morrissey, ante,* 505, 509–511. *Commonwealth* v. *McCambridge, ante,* 516, 520–521. *Commonwealth* v. *Rogers, ante,* 522, 530–531.

The defendant also contends that the admission of Hurley's testimony relative to Mrs. Roy's accusatory statements abridged his right under the Sixth and Fourteenth Amendments of the United States Constitution to confront the witnesses against him. See *Pointer* v. *Texas,* 380 U. S. 400. We do not agree. Evidence of Mrs. Roy's statements was admissible to "give meaning and effect" to the defendant's equivocal remarks. See *Commonwealth* v. *Kenney,* 12 Met. 235, 237; *Commonwealth* v. *Anderson,* 220 Mass. 142, 145. When introduced for this purpose, and not for the purpose of showing the truth of Mrs. Roy's statements, Hurley's testimony was not hearsay. See Wigmore, Evidence (3d ed.) § 1361. Nor do we think that Mrs. Roy thereby became a witness against the defendant within the meaning of the Sixth Amendment. See *People* v. *Brooks,* 234 Cal. App. 2d 662, 676–677. It follows that the admis-

sion of Hurley's testimony did not abridge the defendant's right of confrontation.

2. "An admission alone . . . or in combination with circumstantial evidence . . . may be enough [to convict] if sufficiently persuasive." *Commonwealth* v. *Machado,* 339 Mass. 713, 716, and cases cited. Here the defendant made several equivocal remarks which, in view of Mrs. Roy's accusatory statements, could be considered as admissions of his guilt. In addition, there was the corroborating evidence that the defendant lived with Carla Johnson and had been drinking with her the evening of the shooting. A revolver and bullets were found in the apartment, as well as a mop with blood on it. The defendant returned to the apartment, dressed only in a "T-shirt" and trousers, several hours after the shooting. The defendant, indeed, does not contend that, if the equivocal replies were admissible as admissions, the evidence was insufficient. Since Hurley's testimony was admissible as evidence tending to show that the defendant shot Carla, the court rightly denied his motions for directed verdicts.

3. Albert Parvin, a Revere police officer, testified as follows: At about 1:30 A.M. on March 31, 1965, he was sent to the apartment where Carla and the defendant lived. He was given the description of a man and told to wait for that man or anyone who should enter the apartment. About 4 A.M. the defendant entered. His appearance matched the description Parvin had been given. Parvin testified: "I asked him who he was. He asked me what we were doing there. I told him his wife was in the hospital. To this, he made no response. No answer. . . . I asked him his name and he replied 'John Shea.' " The defendant excepted generally to the admission of the portions of this testimony relating to Parvin's questions and the defendant's silence and eventual reply, "John Shea."

The defendant contends that Parvin's testimony was not admissible as an admission of guilt because (1) the statement "your wife is in the hospital" did not require a reply, (2) he often used the name "John Shea" and so was not

attempting to conceal his identity, and (3) he was not properly warned of his rights. But we need not consider these contentions. Parvin's testimony appears to have been introduced principally to establish that the defendant entered the apartment not long after the shooting. The testimony was admissible to establish the identity of the person who entered the apartment. Since it was admissible in evidence on this ground, the defendant's general exceptions cannot prevail. *Commonwealth* v. *Durkin,* 257 Mass. 426, 428. *Solomon* v. *Dabrowski,* 295 Mass. 358. *Commonwealth* v. *Connolly,* 308 Mass. 481, 493. There is nothing in the bill of exceptions to indicate that the jury were instructed that they could consider this testimony as an admission by the defendant of his guilt. Compare *Commonwealth* v. *Wallace,* 346 Mass. 9, 14–15. Nor, as pointed out above in the discussion of Hurley's testimony, did the sufficiency of evidence for guilty verdicts depend upon Parvin's testimony being construed as an admission.

*Exceptions overruled.*