**James E. BROOKS, Appellant,**

v.

**STATE of Delaware, Appellee.**

Supreme Court of Delaware.

May 5, 1967.

Harrison F. Turner, Asst. Public Defender, for appellant.

Merrill C. Trader, Deputy Atty. Gen., for appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

The appellant, James E. Brooks, has appealed from a sentence imposed in Superior Court after a jury verdict of guilty of grand larceny under T. 11 Del.C. § 631. He charges that his confession was improperly admitted into evidence because it was involuntary and was made without his having been informed of his rights to remain silent and to have counsel, as required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

The defendant was first questioned but not arrested on August 9, 1966. The questioning was by Detective Collison, who testified that he first gave defendant the various cautions required by the Miranda case. At that time, defendant's statements were entirely exculpatory. He was again questioned at the police station by two detectives, Collison and Kemp, on August '11, 1966, at which time he signed a confession. At the trial, before this confession was admitted, a hearing on voir dire was

held on the issue of its admissibility. See Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. The only testimony offered during this voir dire was that of the two police officers. The defendant offered no evidence whatever on his own behalf during that hearing, although he later testified before the jury.

■ The testimony of the two officers was substantially the same and was as follows: On August 11, they met Brooks at a Magistrate's office where he had gone to pay a fine for a traffic offense. They told him they had a warrant for his arrest, but did not actually arrest him at that time. Upon their request, he accompanied them to the police station. Kemp there repeated the Miranda cautions, and Brooks answered that he did not want a lawyer because he had not done anything wrong. Kemp then, in the presence of Collison and Lt. Gilliam, proceeded to question the defendant about the larceny. Brooks related the same exculpatory story which he had previously given to Collison. Kemp then said that Brooks was lying (or that he was a liar) because his story did not agree with other information the police had received. Bit by bit Kemp mentioned this other information. For reasons unknown to the officers, Brooks became nervous and emotional during the questioning and, at one point, broke into tears. After the interview had gone on for about twenty minutes, Officers Gilliam and Kemp left the room. Immediately after their departure, Brooks orally confessed to Collison. The latter then read to Brooks, and had him sign, a written statement acknowledging knowledge and waiver of his "Miranda" rights, which were therein specified, but which contained one error mentioned later herein. Collison then typed a written confession by the process of first typing a question, reading it to the defendant, then typing defendant's answer. Upon its completion, he read the entire statement to the defendant, who signed it at the officer's request. During the typing process Kemp came into the room momentarily once or

twice but said nothing; those visits were apparently made simply to get something from the desk. He was, however, called in to witness the statement after it was signed. All the foregoing matters consumed a total time of about one hour and fifty minutes, of which about 1½ hours were spent in receiving the oral and written confessions. According to both officers, no threats or promises were made to Brooks. At some time after the two officers had gone out of the room, Brooks asked Collison if the latter could help him. Collison replied that "we would see what we could do, we couldn't promise him anything." It is not clear whether this was said before, during or after the confession. It, of course, was not a promise.

■ The paragraph which was read to Brooks before the typing began correctly and fully met all the requirements of the Miranda case except the one dealing with furnishing counsel. Part of it was in this language:

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. You have the right to advice and presence of a lawyer even if you cannot afford to hire a lawyer. We have no way of giving you a lawyer but one will be appointed for you if you wish, if and when you go to Court."

This last sentence contains the suggestion that the accused could not get free counsel unless and until he should go to Court. To that extent, it is an incorrect statement of his right.

■ Counsel argues that, because of the error in this advice, the confession was inadmissible. This contention might be acceptable if no other warnings had been given. The State's evidence showed, however, that correct advice had been given by Collison prior to his first questioning on August 9th and repeated to him at the beginning of the interview on August 11th, and that he had expressly waived

counsel. The faulty language was not uttered until after he had made an oral confession to Collison. We think the trial Judge was justified in his finding that ample warnings had been given.

■■ Counsel also argues that defendant early in the questioning demonstrated a desire to terminate the interview and that anything which he thereafter said was inadmissible. Although he did not expressly say this, it is suggested that he impliedly showed the desire by saying that he had not done anything wrong and repeating his former exculpatory story, and thus indicated a desire not to answer any questions differently than he had already answered, wherefore the police should have thereupon ceased their questioning. We cannot follow this argument. Certainly a desire to terminate questioning may be shown in some manner other than express language, but we think the facts here do not justify the suggested conclusion.

■ The next contention made is that the confession was involuntary because the evidence shows that the defendant was emotionally upset when it was made and that it was accordingly not "the product of a rational intellect and a free will". Unquestionably at some stage before confessing he was emotionally disturbed to the point of breaking into tears; he even said something about killing himself. There was nothing before the Court at the time its rulings were made to explain the cause of his emotion; certainly, there was no particular reason to conclude that it was brought about by any wrongful act of the officers. A possible reason could have been his realization that they "had the goods on him". In any event, it seems clear that his emotions had quieted down before he confessed. We find no adequate reason to overrule the action of the trial Judge because of this contention.

■ Finally, it is suggested that the trial Judge should have found that psychological-ly coercive tactics were used by the police, i. e., the use of the "Mutt and Jeff" maneuver described in the Miranda opinion, with Kemp playing the part of a hardboiled Mutt and Collison the part of a kindly Jeff. All we need say on this score is that any such finding would have been largely guesswork; the evidence itself did not show such a tactic.

■ As previously indicated, the testimony we have so far mentioned was the only evidence before the trial Judge when he made his ruling on voir dire. It was thereafter repeated to the jury before the confession was read to them. At that time, the record before the Court amply justified its ruling, the admission of the confession and its submission to the jury. After the State had rested its case in chief, the defendant took the stand for the first time, denying his guilt and giving a somewhat different version of the facts surrounding the confession. Assuming that, had his evidence been before the trial Judge prior to his ruling, a different result might have been reached, yet after his testimony had been given, no motion was made to strike the confession. His evidence came too late to affect admissibility; it was before the jury in their consideration of the verdict.

■ In his *reply* brief filed in this Court, defendant for the first time seeks to raise the question of the State's burden of proof of admissibility, that is, whether the standard is one of reasonable doubt or whether some lesser quantum is sufficient. This question was not raised below, the trial Judge gave no indication of his views on the point nor did he indicate what standard he actually applied in making his ruling. This matter does not involve "plain error" which would justify this Court in ignoring our usual rule against deciding questions not raised or decided below. See Webster v. State, Del., 213 A.2d 298. We decline to consider it.

The judgment below will be affirmed.