## FRANK F. ROBINSON *v.* STATE OF MARYLAND

[No. 240, Initial Term, 1967.]

*Decided July 24, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and TRAVERS, J., Associate Judge of the First Judicial Circuit, specially assigned.

*Michael Lee Kaplan,* with whom was *Morris Lee Kaplan* on the brief, for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Bernard L. Silbert, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

Frank F. Robinson, a young man, 18 years old, with a ninth grade education, was convicted by the Criminal Court of Baltimore of Assault with Intent to Rob, and was sentenced to an indeterminate term not to exceed three years in the Maryland Correctional Institution. He appeals from the judgment of conviction and sentence and assigns as the errors in his trial: (1) the erroneous admission in evidence of a statement allegedly made by him, (2) the refusal of the Trial Court to find a verdict of "Not Guilty" because of the insufficiency of the evidence to sustain a finding otherwise, (3) the refusal of the Trial Court to grant a motion of judgment of acquittal made by his attorney at the conclusion of the case.

The evidence presented at the trial revealed that Mrs. Lor-

raine Meekins was returning to her home at 45 Kossuth Street, Baltimore, Maryland, shortly after midnight on May 3, 1966, and when she was not far from her home, three boys approached her from the opposite side of the street on which she was walking. As they came within close proximity, one of the boys grabbed her purse, containing twenty-five to fifty dollars. A struggle ensued between the complaining witness and the defendant during which time she was screaming, and in the tussle, although the purse strap broke, the attempted theft was unsuccessful.

After the altercation, she ran to her home where she informed her husband and daughter of the occurrence. Her daughter called the police while she and her husband went out back into the street to find the boys that had attacked her.

She saw the defendant coming up the street and her husband inquired if he was one of the boys involved and she replied in the affirmative. Her husband then brought the defendant into the home to await the arrival of the police. She later identified the defendant as her attacker despite the fact that she had seen him for only a minute to a minute and a half, but this identification was made within 10 to 15 minutes after the event. The defendant denied ever grabbing for Mrs. Meekins' purse although admitting he was on the street at the time.

The defendant lived at 30 North Kossuth Street, Baltimore, Maryland, and had worked for two weeks at a restaurant in the 4500 Block, Reisterstown Road. His usual hours were from 11 a.m. to 8 p.m., but on this particular night he had worked overtime and was returning home about 11 p.m. His testimony was that while he was on the right hand side of the street, he heard Mr. Meekins ask if that was one of the boys and she replied that it was. As a consequence, he started to walk across the street to meet them. Her husband met him halfway across, took him into the house and then called the police. He denied all connections with the alleged attempt to rob Mrs. Meekins at the time, later denying the charges when formally made.

The defendant was taken into custody by the police and denies having made a statement to them. He freely admits that during the questioning an officer told him he "had a right to lawyer, that you could have a lawyer" and in addition, was

told he did not have to say anything until he had consulted with an attorney, and further, that anything he said could be used against him in Court.

Officer Ronald Mullen, assigned to the Southwestern District, was called in rebuttal for the sole purpose of repeating "an oral statement" from the defendant. He does not state where he interrogated Robinson, but said another officer and his Sergeant were present. It is assumed they were all at the Southwestern District Station. The defendant answered that he didn't need a lawyer and didn't want a lawyer. At one point, the officer questioned Frank about his participation in the offense and he stated Frank became indignant when he suggested it was one of the other boys that had planned the offense, whereupon Frank replied that he had, in fact, pulled on the purse and that the other two boys with him ran when he made the grab.

Proper objections were made to the testimony at the time and overruled, as well as the motion to strike the testimony after its reception. At no point in the evidence does it appear the defendant was told or understood that he could have a lawyer furnished at the expense of the state if he was without the necessary funds to employ counsel of his own choosing. During the trial of the case, when this testimony was introduced into the defense on cross-examination, the Court adopted the position that the case "wouldn't come under the *Miranda* case."

Oral confessions are in the same category as if in writing. They are to be given the weight the trier of fact decides and are subject to the same infirmities. See *Whitmer v. State,* 1 Md. App. 127, and cases cited therein.

The case of *Miranda v. Arizona,* 384 U. S. 436, 86 Sup. Ct., 1602, 16 L. Ed. 2d 694, was not decided until June 13, 1966. This case was tried July 20, 1966, a few days in excess of a month after *Miranda* and its full impact on criminal proceedings had not yet been established. At the time a gray area existed which left the lower courts groping for a full compliance with the mandate of the case regarding confessions which has now been largely corrected. When the opinion in *Miranda* was published, and the courts had access thereto, it was universally known that before a prisoner could be interrogated, with the idea of using his statement at his trial, four safeguards had to

be shown: (1) advice to the prisoner in clear terms that he had a right to remain silent; (2) a thorough understanding that anything he said may be used against him in Court; (3) a clear understanding that he had the right to have a lawyer with him during the questioning and consult with him from time to time; (4) that if the prisoner was indigent, a lawyer would be appointed to represent him. In this case, the State concedes there was not a strict compliance but argues there was a substantial compliance.

*State v. Gray*, 268 N. C. 69, 150 S. E. 2d 1, is closely analogous to this case. The defendant was tried under an indictment charging him with felonious breaking and entering and with larceny. He was represented by two attorneys of his choice, was found guilty as charged, and sentenced to the state prison for not less than four nor more than six years. At the time of the arrest he was advised that he could remain silent if he wanted to and that anything he might say may be used against him in Court, as well as the fact he would "have time for a lawyer if he wanted one." During the course of the interrogation he told the Deputy Sheriff that he would like to settle the whole thing and return the stolen articles. He then related how the articles were obtained by him. Over objection his statements were admitted in the trial of the case. At no point in the case was there any suggestion that if he was an indigent person he was entitled to have counsel appointed for him. The defendant was at the time a college student and there was no suggestion that his college fees and expenses were paid by anyone other than himself or his relatives. The record did not show the defendant to be indigent nor was any contention made by him that he was in that state and entitled to have counsel appointed for him at any time in the proceedings. The Court held the defendant not to be indigent and that the admission of the statements made to the officers did not violate the rights of the defendant under the due process clause of the Fourteenth Amendment.

In *United States v. Low*, 257 F. Supp. 606 (1966), the defendant was indicted for possession of counterfeit obligations of the United States. He was arrested in Washington, Pennsylvania, around midnight, November 6, 1965, by Secret Ser-

vice Agents while in possession of a satchel containing a quantity of the counterfeit obligations and was immediately taken to the Secret Service offices in Pittsburgh. There he was questioned for a period in excess of an hour by the agent in charge. Apparently, he was a very talkative individual, so much so that he was advised not only that he could consult an attorney, but that he should get an attorney. The evidence failed to disclose, however, that he made an intelligent and knowing waiver of his rights to counsel, his answer was "all right." In ruling on a motion to suppress, the Court said, on p. 614. "The record before us does not sustain the heavy burden which 'rests on the Government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.' For this reason, all statements made by the defendant to any agent during this period of his custody must be suppressed."

In this case we feel there were proper admonitions given to the defendant as required by *Miranda*, except in one particular. We find a proper warning was given him regarding his right to remain silent and that anything he said may be used against him in Court. Further, he was told he had a right to have a lawyer present, but we cannot find at any point he was told that he could have an attorney at the expense of the State if he was unable to furnish one in his own defense. Not to make this addition would be the equivalent of making no statement at all, for the defendant could very well feel he was being told something he already knew. We believe the failure of the person interrogating the defendant to do so was error. For that reason, we believe the case should be reversed and a new trial granted.

*Reversed and remanded for a new trial.*