DICK THOMAS a/k/a RICHARD THOMAS *v.*
STATE OF MARYLAND

[No. 1, September Term, 1967.]

*Decided February 14, 1968.*

The cause was argued before MURPHY, C. J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*Thomas M. O'Malley,* with whom was *Michael F. X. Dolan* on the brief, for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Allen S. Handen, State's Attorney for Calvert County,* on the brief, for appellee.

PER CURIAM.

The Appellant, Dick Thomas, was convicted of assault with intent to murder, common-law assault and carrying a deadly weapon by a jury in the Circuit Court for Calvert County, on November 28, 1966, Judge Perry B. Bowen, Jr. presiding. He was sentenced to concurrent eight year terms in the Maryland Penitentiary under the assault and assault with intent to murder convictions and to a two year concurrent term under the deadly weapon charge.

The record indicates that on April 16, 1966, a shooting match erupted in a public tavern in Calvert County. A total of fourteen bullet wounds were inflicted upon the Appellant and four other persons. Evidence produced by the State showed the Appellant to be both instigator and aggressor. Other evidence indicated the aggressor to be Howard Chase, Jr., who was struck by several of the bullets fired from the Appellant's gun.

A Maryland State Trooper testified that on the morning after the crime he located the Appellant in the District of Columbia General Hospital and there obtained his written confession which was admitted into evidence, over objection, at trial. The Appellant here challenges the admissibility of that confession.

The following testimony was elicited from the Trooper by the State on direct examination:

"Q. Now prior to taking the statement did you threaten him or promise him in any fashion? A. No sir, I didn't.

Q. Did any one in your presence threaten or promise him in any fashion? A. No sir.

Q. Did you advise him of his right to counsel? A. Yes sir, I advised him that he had the right to counsel.

Q. Did you advise him that anything that he said, may be used against him in Court? A. Yes sir, I did.

Q. Now sir, did he have an opportunity to read the statement? A. Yes sir, he did.

Q. And after reading the statement, did he sign it? A. Yes sir, he did."

On cross examination the following was elicited from the Trooper:

"Q. [By Mr. O'Malley] And what did you tell him in regards to the legal counsel? A. I advised him that he had the right to obtain legal counsel, I don't remember the exact words, it is in the statement."

\* \* \*

"Q. [By Mr. O'Malley] Did he say he had a lawyer? A. I don't recall whether he did or not."

\* \* \*

"Q. [By Mr. O'Malley] Do you recall asking him whether or not he wanted a lawyer? A. I don't believe so, I may have, I can't answer that for sure."

The confession here involved was given on April 16, 1966, at a time when the trooper could not have known of the additional safeguards surrounding confessions which were to be announced by the Supreme Court of the United States on June 13, 1966 in *Miranda v. Arizona,* 384 U. S. 436. While these safeguards were not accorded retroactivity, *Johnson v. New Jersey,* 384 U. S. 719 and *Westfall v. State,* 243 Md. 413, it is clear that they prevail in this case, the trial of which first began after June 13, 1966. But see, *Boone v. State,* 3 Md. App. 11. Thus, the Appellant's confession, introduced at his trial on November 29, 1966, was properly admissible only if it was affirmatively shown that its taking was surrounded by the *Miranda* safeguards. In the words of Chief Justice Warren (at p. 478):

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his free-

dom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

It is apparent from the record excerpts set out above that the State failed to show that the Appellant was advised "that if he cannot afford an attorney one would be appointed for him prior to any questioning if he so desires;" nor was he advised of his "right to the presence of an attorney" during the interrogation. This, in our opinion, was the omission of a crucial warning and made the use of the confession in the trial below constitutionally impermissible. While there may have been evidence, other than the confession, tending to support the jury's finding of guilty, it is apparent that the admission of the confession so tainted the proceedings that the Appellant must be afforded a new trial. *Jackson v. Denno,* 378 U. S. 368. Our decision here is in accordance with the holding of this Court in *Robinson v. State,* 1 Md. App. 522.

Since the judgment of the lower court must be reversed we do not reach the other contentions raised by the Appellant. It

should be noted, however, that the jury found the Appellant to be guilty of assault with intent to murder and common-law assault. On the facts of this case, the latter constituted a lesser included offense in the crime of assault with intent to murder, inasmuch as the facts necessary to prove the assault, in this instance, were essential ingredients of the major crime. *Chittum v. State,* 1 Md. App. 205; *Burks v. State,* 1 Md. App. 81. On the other hand, the lesser charge of carrying a deadly weapon does not merge with the greater offense of assault with intent to murder since the essential ingredients of the former are not necessarily included in the latter. *Sherrod v. State,* 1 Md. App. 433.

> *Judgment reversed and case remanded for new trial.*