Twyla Mae **RUBEY**, Appellant,

v.

**CITY OF FAIRBANKS**, Appellee.

No. 956.

Supreme Court of Alaska.

June 23, 1969.

Thomas E. Curran, Jr., of Savage, Erwin & Curran, Anchorage, for appellant.

Stephen S. DeLisio, of Merdes, Schaible, Staley & DeLisio, Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

In a trial by the district court without a jury, appellant was convicted of the offense of assignation,[1] a misdemeanor. The judgment of conviction was affirmed by the superior court. An appeal was then taken to this court.

Appellant's first point is that she was not adequately advised of her right to counsel under the requirements of Miranda v. Arizona,[2] and therefore her signed statement in which she admitted the offense with which she was charged should not have been admitted into evidence against her.[3]

City Police Officer Tannenbaum testified that prior to questioning appellant he advised her of "her rights". When asked what rights he was talking about, he said:

I told her that I was a police officer and I was going to ask her questions in connection with the arrest that particular morning and she didn't have to answer any of my questions, and anything that she did say would be used against her in Court and she was entitled to an attorney and I asked her if she wanted to call an attorney and she said no.

Later he stated, with regard to appellant's right to counsel, that he advised her: "[S]he's entitled to an attorney and one would be provided for her if she did not have the funds to get one."

Appellant's contention here is that Tannenbaum's warning that she had the right to retained or appointed counsel was not enough—that a complete Miranda warning required that she be informed she had the right to the presence of an attorney both before and during interrogation.

Miranda does require that a defendant be warned of his right to the "presence of an attorney"—of the right to have "counsel present" during any questioning.[4] But the fact that Tannenbaum did not specifically tell appellant that she had the right to have counsel "present" during questioning does not mean that she was not advised of her right in this respect. He told appellant, prior to questioning, that he was a police officer, that he intended to ask her questions in connection with her arrest, that she did not have to answer any questions, that anything she did say would be used against her, and that she was entitled to an attorney. He then asked her, also prior to interrogation, if she wanted to "call an attorney" and she answered "no."

Considering the circumstances in which Tannenbaum said to appellant what he did, we believe that appellant must have understood that if she had asked for an attorney he would have been present during the questioning. The warning given as to her right to counsel, together with the query as to whether she wanted to call an attorney, all of which took place prior to questioning, reasonably would leave the impression in appellant's mind that if she had wished to have counsel represent

---

1. The offense charged was a violation of the Fairbanks City Code, section 6.301 (a) (1) of which defines "assignation" as meaning:

 [T]he making of any appointment or engagement for prostitution or lewdness or any act in furtherance of such appointment or engagement.

2. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

3. In Miranda v. Arizona the United States Supreme Court held that when a person is taken into custody in connection with a criminal matter or is otherwise deprived of his freedom of action in any significant way by the authorities and is subject to police interrogation, the person must be warned prior to any questioning that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed. In the absence of such a warning and proof of a knowing and intelligent waiver of one's privilege against self-incrimination and right to retained or appointed counsel, no evidence obtained as a result of the police interrogation can be used against the defendant. Hammonds v. State, 442 P.2d 39, 40–41 (Alaska 1968).

4. Miranda v. Arizona, 384 U.S. 436, 444, 470, 86 S.Ct. 1602, 16 L.Ed.2d 694, 706–707, 721 (1966).

her the questioning would have been deferred until after she had time to consult with an attorney.

This conclusion is strengthened by the fact that appellant not only did not request the presence of an attorney, but expressly stated she did not wish to call one. There is no reason to believe that appellant did not understand what her rights were. In speaking of appellant Officer Tannenbaum said:

> She appeared to be fairly educated, she looked as if she knew what I was talking about, and she seemed to understand and comprehend what I was saying.

We construe appellant's actions as amounting to a knowing and intelligent waiver of her right to have counsel present.[5] In order to reach the conclusion urged by appellant, that she was not adequately advised of her right to counsel, we would have to assume that appellant may not have waived her right to counsel if she had been told expressly that her right in this regard was to have counsel present during questioning. And such an assumption logically would require another assumption—that if appellant had understood she had the right to the "presence of an attorney", rather than just the right to an attorney in general, she would have then requested or demanded that an attorney be present at the questioning, rather than saying as she did, that she did not wish to call one. These are not reasonable assumptions to make under the circumstances.

Appellant was properly advised of her right to counsel, retained or appointed, under *Miranda* and the cases where the requirements of *Miranda* have been considered by us.[6] She knowingly and intelligently waived that right. The statement she signed, admitting the offense with which she was charged, was properly admitted into evidence.[7]

A man named Potter had telephoned appellant at Tannenbaum's suggestion and had made arrangements to meet appellant in Room 201 of the Polaris Building in Fairbanks. Tannenbaum gave Potter some marked money. Tannenbaum testified that he and Potter had a prearranged plan whereby Potter would turn over the marked money to appellant, and Potter would then open the door to Room 201 and let Tannenbaum in.

After Tannenbaum had waited in the hall of the Polaris Building for about 20 minutes, Potter opened the door to Room 201 and asked Tannenbaum to come in. Potter stood in the doorway unclothed. Tannenbaum entered the room and saw appellant entering the bathroom with only a slip on. At this time Potter pointed to appellant and said, "[Y]ou're under arrest for prostitution."

Almost immediately thereafter Tannenbaum advised appellant that she was under arrest, and asked her for the money that Potter had given her. Tannenbaum testified:

> She said I'm not going to give it to you, I earned it. I said well, I'm afraid you're going to have to * * * ah * * give it to me and that's when she took it out of her bra and handed it to me * * *.

Appellant contends that the acquisition of the money by Tannenbaum was the result of an unreasonable search and seizure.

■ Appellant at first refused to hand over the money to Officer Tannenbaum, and then capitulated at his insistence. Since she revealed the location of and handed over the money at a police officer's demand, there was a search and seizure, rather than a voluntary surrender of the money.[8]

---

5. Thessen v. State, 454 P.2d 341 (Alaska 1969).

6. Thessen v. State, 454 P.2d 341 (Alaska 1969); Nicholi v. State, 451 P.2d 351 (Alaska 1969); Soolook v. State, 447 P.2d 55 (Alaska 1968).

7. Thessen v. State, 454 P.2d 341 (Alaska 1969).

8. In Brown v. State, 372 P.2d 785, 790 (Alaska 1962) we said: "A seizure contemplates a forcible dispossession of the owner and it is not a voluntary surren-

■ The kind of search and seizure forbidden by constitutional provisions is that which is unreasonable. A search and seizure would be unreasonable if done without a search warrant, unless the facts are such to bring the case within an exception to the rule that there must be a search warrant. The exception we are concerned with here is that which recognizes the validity of a search and resulting seizure made without a warrant when the search is made incident to a lawful arrest.[9] And since the arrest in this case was made without a warrant, and the offense involved was a misdemeanor, the lawfulness of the arrest depends on whether the arresting officer was present at the commission of the offense.[10]

■ Tannenbaum had overheard the telephone conversation between Potter and appellant where arrangements were made for the latter to meet appellant in Room 201 of the Polaris Building for purposes of prostitution. When Tannenbaum entered the room Potter was unclothed and appellant was partially unclothed. Tannenbaum heard Potter say to appellant that she was "under arrest for prostitution." These circumstances would give Tannenbaum reason to be aware that at the time he told appellant she was under arrest she was committing the offense of assignation because she was engaged in an act in furtherance of an appointment previously made for prostitution or lewdness. What Tannenbaum observed, considered in the light of his prior knowledge, was sufficiently indicative of the offense of assignation being in the course of commission.[11] The arrest made without a warrant was lawful, and a search and seizure, made as it was incident to such a lawful arrest, was not unreasonable.

■ Appellant contends that testimony regarding Tannenbaum's seizure of the money was inadmissible because appellant was not at that time given a *Miranda* type warning as to her right to remain silent and to have retained or appointed counsel represent her. There is no merit to this contention. *Miranda* forbids the use in evidence of a statement made by a defendant in custody who was not warned of his privilege against self-incrimination and his right to counsel. The *Miranda* rule has no application to the question of whether a search and seizure is lawful.[12]

Officer Tannenbaum testified that the Polaris Building where Potter met appellant was located inside the City of Fairbanks. He also testified that the police station from which Potter placed the telephone call to appellant was in the city. However, the Key Board Club where appellant received the call was outside the city. Appellant contends that the term "assignation" means appointment, that an appointment is the essence of the offense of assignation, and that since appellant made an appointment to meet Potter while she was outside the city limits the court, which was trying a violation of a municipal ordinance, had no jurisdiction over the offense.

■ This contention is untenable. The offense of assignation includes not only the making of an appointment for prostitution or lewdness, but also "any act in furtherance of such appointment."[13] Appellant kept the appointment she had made by meeting Potter at the Polaris Building. It was at the Polaris Building that she received money from Potter and engaged in the act of prostitution. These were acts in furtherance of the appointment, they constituted "assignation" within the definition of

---

der." See Sleziak v. State, 454 P.2d 252 (Alaska 1969).

9. Goss v. State, 390 P.2d 220, 223 (Alaska 1964) ; Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777, 780 (1964).

10. Drahosh v. State, 442 P.2d 44, 46 (Alaska 1968).

11. United States v. Viale, 312 F.2d 595, 600 (2d Cir.), cert. denied, 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963).

12. See Sleziak v. State, 454 P.2d 252, 259 (Alaska 1969).

13. Fairbanks Code of Ordinances § 6.301 (a) (1).

that offense, and they took place within the City of Fairbanks. The court had jurisdiction to try this violation of the city's ordinance.

Appellant lists some 26 instances where the Alaska legislature by statute has regulated the criminal aspects of sexual activity. Assignation is not included—it is not made a crime by the legislature. Appellant argues that the legislature's extensive regulation of sexual behavior is evidence of its intent to pre-empt this field so that any phase of such behavior not made criminal by the legislature may not be made criminal by a political subdivision of this state. Appellant argues from this that the attempt to make assignation an offense by the City of Fairbanks is invalid.

Appellant relies primarily on the California Supreme Court decision in the case in *In re Lane*.[14] That case invalidated a portion of the Los Angeles Municipal Code which made criminal any sexual intercourse by one to whom the other party was not married. The court held that the state legislature had pre-empted the field of sexual offenses, that since simple fornication or adultery was not made a crime by state law, the legislature had determined by implication that such conduct should not be criminal in California, and that the attempt at local regulation of this subject was in conflict with state law and was void.[15]

We are not persuaded to adopt the doctrine of the *Lane* case. California's constitutional prohibition against local regulations is different from Alaska's. Article XI, section 11 of the California constitution provides that a city "may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws." Article X, section 11 of the Alaska constitution provides that a home rule city, such as Fairbanks, "may exercise all legislative powers not prohibited by law or by charter." There is no legislative enactment in Alaska that expressly prohibits a home rule city from making assignation a criminal offense. We do not find such prohibition from the fact that the Alaska legislature has extensively covered the field of sexual offenses. We believe there would have to be some additional factor from which the intent of the legislature to prohibit local regulation in this area could be reasonably inferred.[16] We are not aware of any such factor in this case. We shall not pass further on the general subject of pre-emption by state law, because the subject is complex and has not been adequately briefed in this case.[17]

Potter telephoned appellant from the police station at Tannenbaum's request. According to Tannenbaum's testimony the conversation between Potter and appellant was as follows:

Mr. Potter dialed the number and * * * ah * * * I * * * ah * * * heard someone pick up the phone on the other end, and it was a male * * * a man that answered the phone and he said, "Key Board Club" and * * * ah * * * Potter said * * * ah * * let me talk to Twyla. It was a moment or two and then I heard the female's voice, Mrs. Rubey's voice that saids [sic] hello and Potter said this is Willie. He saids [sic], hey can I see you tonight? And * * * ah * * * she saids [sic] well, do you want to go for fifty? He saids [sic] yea, I've got fifty,

14. 58 Cal.2d 99, 22 Cal.Rptr. 857, 372 P.2d 897 (1962).

15. In re Lane, 58 Cal.2d 99, 22 Cal. Rptr. 857, 372 P.2d 897, 900 (1962).

16. *See* 1 Antieau, Municipal Corporation Law § 5.38, at 292.38 (1968).

17. *See* 1 Antieau, Municipal Corporation Law §§ 3.36, 5.35, 5.38 (1968); 50 Calif. L.Rev. 740, 741–42 (1962); Note, Conflicts Between State Statutes and Municipal Ordinances, 72 Harv.L.Rev. 737, 744–45 (1959); Chavez v. Sargent, 329 P.2d 579, 584 (Cal.Dist.Ct.App.1958); Ayers v. City of Tacoma, 6 Wash.2d 545, 108 P.2d 348, 352 (1940); People ex rel. Pub. Util. Comm'n v. Mountain States Tel. & Tel. Co., 125 Colo. 167, 243 P.2d 397, 399 (1952).

I'll go for fifty. And then she says [sic] well, I'll meet you in twenty minutes at the Polaris Building room 201. He saids [sic] o. k. I'll see ya. And that was it.

Appellant contends that a "conspiratorial association" between Officer Tannenbaum and Potter induced appellant to commit the offense of assignation. What appellant is urging is the defense of entrapment.

In order for there to be entrapment, the facts must show that the criminal design originated not in the mind of appellant, but in the minds of Tannenbaum and Potter, and that appellant was induced by these people to commit the offense of assignation which she would not otherwise have committed.[18]

Viewing the evidence in a light most favorable to the state,[19] we believe that entrapment is not disclosed by the facts. According to the telephone conversation as related by Tannenbaum, appellant stated her willingness to meet Potter and gave her "price" of $50 in response to the innocuous question of whether Potter could "see" appellant that night. This would tend to show that appellant was disposed to commit the offense of assignation even without the inducement of Potter or Tannenbaum. The facts indicate that the criminal design originated in appellant's mind, and the most that Potter and Tannenbaum did was to encourage appellant's boldness.[20]

Potter was not a witness at the trial. Tannenbaum testified as to the telephone conversation between Potter and appellant, as we have already noted. Appellant objected to this testimony, contending at the trial and also here that to allow that testimony was to deny appellant's right to be confronted with a witness against her.

Appellant is correct. The sixth amendment to the federal constitution and article I, section 11 of the Alaska constitution provide that in all criminal prosecutions the accused is entitled "to be confronted with the witnesses against him." The primary interest served by this requirement is to afford a defendant the right of cross-examination.[21] Appellant was denied this right. By allowing Tannenbaum to testify as to the telephone conversation between appellant and Potter, the court in effect allowed Potter to be a witness against appellant, since what Potter is reported to have said is that he wished to see appellant on a particular night, that in answer to her question as to whether he would "go for fifty" he expressed his willingness to pay appellant $50 for what presumably was to be an act of prostitution, and that he was agreeable to meeting appellant in Room 201 of the Polaris Building in 20 minutes. Appellant was not afforded the right to test the veracity of this testimony by cross-examination of Potter. She was denied her constitutional right to be confronted with this witness against her. The testimony of Tannenbaum as to what Potter said on the telephone was inadmissible.

In his dissent our colleague states that where non-hearsay evidence is admitted, "no question of [the] constitutional right of confrontation is involved." Although in many situations the hearsay rule and the confrontation requirement serve the same purpose, we do not believe it always follows that since certain evidence is not hearsay its admission does not violate the accused's right of confrontation. Both the federal and Alaska constitutions provide that an accused is entitled "to be confronted with

18. Goresen v. State, 432 P.2d 326, 327 (Alaska 1967).

19. Id.

20. J. Williams, Entrapment—A Legal Limitation on Police Technique, 48 J. Crim.L.C. & P.S. 343, 345 (1957).

21. Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934, 937 (1965); Pointer v. Texas, 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923, 926 (1965); Parker v. Gladden, 385 U.S. 363, 364, 87 S.Ct. 468, 17 L.Ed.2d 420, 422 (1966); C. McCormick, Law of Evidence § 19, at 40 (1954).

the witnesses against him." [22] Potter was a witness "against" appellant, because what he was reported to have said on the telephone implicated her in the criminal act of assignation. Appellant had the right to cross-examine Potter in order to ascertain whether he actually did say what he is reported to have said.

It has been said that the right of confrontation is a "fundamental right essential to a fair trial in a criminal prosecution." [23] The question is whether denial of that right, as was done here, requires a reversal of the judgment of conviction.

 We have a harmless error rule—Criminal Rule 47(a) providing that "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." This applies to constitutional errors as well as to others. All trial errors which violate constitutional provisions do not automatically call for a reversal. But such errors cannot be declared harmless if there is a reasonable possibility that evidence admitted in violation of constitutional rights might have contributed to the conviction.[24] Another way of putting it is that before a constitutional error can be held to be harmless, the court must be able to declare a belief beyond a reasonable doubt that the error was harmless—that it did not contribute to the verdict obtained.[25]

In holding that appellant was convicted of the offense of assignation, the trial judge said that appellant's statement, in which she admitted committing the offense, "would indicate that there was such an assignation." The judge then went on to discuss the substance of the telephone conversation between Potter and appellant, as testified to by Tannenbaum, and concluded with the statement: "This is sufficient * * * to prove the charge beyond a reasonable doubt." It would seem from this that the judge, in holding that appellant was guilty of the crime charged, relied not alone on appellant's written confession, but in addition on the evidence of Potter's conversation with appellant. If this is true, then one could say that such conversation, evidence of which we have held to be inadmissible, did contribute to the ultimate finding of the judge that appellant was guilty. In this circumstance a literal application of the *Chapman* [26] rule would seem to require a reversal of the conviction.

But we cannot be blind to the fact that there was evidence other than the telephone conversation which was more than adequate to sustain the conviction. Tannenbaum testified that he had observed Potter and appellant in a room at the Polaris Building in an unclothed state, which was a strong indication that they had previously made arrangements to meet there for purposes of lewdness or prostitution. There was the evidence of the marked money which Tannenbaum had given to Potter and which Potter had paid to appellant. There was appellant's signed confession where she admitted that she was a prostitute, that she was engaged in an act of prostitution at about 4:00 a. m. on January 2, 1967 in Room 201 of the Polaris Building, the date, time and place that Tannenbaum testified he observed appellant and Potter together, that she had charged $50 for act of sexual intercourse with a man whom, according to her description and Tannenbaum's testimony was Potter, and that she had agreed to engage in the act of sexual intercourse when Potter talked to her on the street and later called her at the Key Board Club—appellant stating: "[H]e wanted me to

22. U.S.Const. Amend. VI; Alaska Const. art. I, § 11.

23. Pointer v. Texas, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 926 (1965).

24. Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171, 173 (1963).

25. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, 710–711 (1967); Thessen v. State, 454 P.2d 341, 350 (Alaska 1969).

26. Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171, 173 (1963); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, 710–711 (1967).

meet him so I told him where, I told him to meet me at the Polaris room 201."

 There was no evidence, or even any suggestion, that appellant's confession was not given knowingly and voluntarily. She did not deny having made it. We have held that the confession was admissible because appellant had been adequately advised of and had knowingly and intelligently waived her rights under *Miranda*. We are aware of no reason why the trial judge, in weighing the evidence, should not have given full weight to the confession. We are unable to ignore the fact that the confession, when considered in the light of evidence other than that of the telephone conversation, was entirely sufficient to establish appellant's guilt beyond a reasonable doubt. Under the requirement of the *Chapman* rule on harmless constitutional error, we are able to declare a belief that the error in admitting Tannenbaum's testimony as to the telephone conversation between appellant and Potter was harmless beyond reasonable doubt.[27]

The judgment of the superior court affirming the judgment of the district court is affirmed.

RABINOWITZ, Justice (dissenting).

In Miranda v. Arizona, the United States Supreme Court held that when a person is taken into custody in connection with a criminal matter or is otherwise deprived of his freedom of action in any significant way by the authorities and is subject to police interrogation, then prior to any questioning

> the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.[1]

Here Officer Tannenbaum's warning fell short of *Miranda's* standards because appellant was not advised of her right to "the presence of an attorney, either retained or appointed" at any interrogation. I am therefore of the opinion that admission into evidence of the statement which was obtained from appellant was erroneous.[2] I am of the further view that the superior court's ruling cannot be characterized as harmless error for I cannot find, beyond a reasonable doubt, that admission of this statement did not contribute to the court's determination of guilt.[3] I would therefore set aside the

27. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, 710–711 (1967); Thessen v. State, 454 P.2d 341, 350 (Alaska 1969).

1. 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–707 (1966). In several subsequent points in their opinion, the United States Supreme Court reiterated this requirement using the following language: "not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires." 384 U.S. 436, at 470, 86 S.Ct. 1602, at 1626, 16 L.Ed.2d 694, at 721; "that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U.S. 436, at 479, 86 S.Ct. 1602, at 1630. 16 L.Ed.2d 694, at 726.

2. Montoya v. United States, 392 F.2d 731, 735 (5th Cir. 1968); Windsor v. United States, 389 F.2d 530, 533 (5th Cir. 1968);

Fendley v. United States, 384 F.2d 923, 923–924 (5th Cir. 1967); Brooks v. State, Del., 229 A.2d 833, 835 (1967); Woods v. State, 211 So.2d 248, 249–250 (Fla.App.1968); Thomas v. State, 3 Md. App. 101, 238 A.2d 558, 561 (1968); Robinson v. State, 1 Md.App. 522, 231 A. 2d 920, 923 (1967).

3. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, 710–711 (1967).
 Neither Thessen v. State, 454 P.2d 341 (Alaska, May 12, 1969); Nicholi v. State, 451 P.2d 351 (Alaska 1969); nor Soolook v. State, 447 P.2d 55 (Alaska 1968), involved the precise issue which is presented by the case at bar. In *Nicholi*, counsel was in fact present during the interrogation; in *Soolook*, the accused was advised of his right to have an attorney present; and in *Thessen*, this question was not raised (*but see* note 7, at 7 of the opinion).

superior court's affirmance of the judgment and commitment which was entered in the district court with directions to remand to the district court for a new trial.

In regard to another facet of the majority's opinion, I find that I cannot agree with the court's conclusion that appellant's right of confrontation was infringed. I am of the opinion that Officer Tannenbaum's testimony as to what Potter said during the telephone conversation with appellant was not hearsay and, therefore, no question of constitutional right of confrontation is involved.[4]

In regard to this question, Professor Wigmore states:

If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the Hearsay rule does not apply. * * *

* * * The Hearsay rule excludes extrajudicial utterances only when of-

fered for a special purpose, namely, *as assertions to evidence the truth of the matter asserted.*[5]

In Watson v. State,[6] we adopted this view. There we said:

Evidence of a statement made other than by a witness who is testifying is excluded as hearsay only when it is offered to establish the truth of the fact stated. Where it is offered without reference to its truth, but for some other relevant purpose, then the hearsay rule does not apply.

The evidentiary rule which we adopted in *Watson* has been followed in many jurisdictions.[7] In the case at bar, the truth of Potter's extrajudicial statements is irrelevant. What is relevant and material is the fact that Potter made these extrajudicial utterances in the course of the telephone conversation with appellant. Officer Tannenbaum's testimony as to Pot-

---

4. Concerning the constitutional right of confrontation and its relation to the Hearsay rule, Professor Wigmore states:
 The rule sanctioned by the Constitution is the Hearsay rule as to cross-examination, with all the exceptions that may legitimately be found, developed, or created therein.
 The net result, then, under the constitutional rule, is that, *so far as testimony is required under the Hearsay rule to be taken infra-judicially,* it shall be taken in a certain way, namely, subject to cross-examination,—not secretly or 'ex parte' away from the accused. The Constitution does not prescribe what kinds of testimonial statements (dying declarations, or the like) shall be given infra-judicially,—this depends on the law of Evidence * * *.
 V J. Wigmore, Evidence § 1397, at 131 (3d ed.1940).

5. VI J. Wigmore, Evidence § 1766, at 177–78 (3d ed.1940).

6. 387 P.2d 289, 293 (Alaska 1963).

7. United States v. Markis, 352 F.2d 860, 863–864 (2d Cir. 1965), vacated, 387 U.S. 425, 87 S.Ct. 1709, 18 L.Ed.2d 864 (1966) ; Greenblatt v. Munro, 161 Cal. App.2d 596, 326 P.2d 929, 932–933 (1958) ; People v. Henry, 86 Cal.App.2d 785, 195 P.2d 478, 480–481 (1948) ; Com-

monwealth v. McGrath, 351 Mass. 534, 222 N.E.2d 774 (1967). In the *Markis* case, Judge Friendly wrote at 863–864 of 352 F.2d :
 Markis claims it was error to admit Ripa's testimony as to Mento's placing of bets by telephone in the absence of identification of Markis' voice as that on the receiving end. It is plain that Ripa could not be allowed to testify as to what Mento said the receiver said; Mento alone could do that. See Van Riper v. United States, 13 F.2d 961, 968 (2 Cir.), cert. denied [Ackerson v. United States] 273 U.S. 702, 47 S.Ct. 102, 71 L.Ed. 848 (1926) ; United States v. Benjamin, 328 F.2d 854, 861 (2 Cir.), cert. denied, 377 U.S. 953, 84 S.Ct. 1631, 12 L.Ed.2d 497 (1964). But Mento's dialing of 336–0254 and his placing of bets, including language used in doing so, were not declarations introduced for their truth, and the hearsay rule thus has no application to Ripa's testimony relating to these events. See United States v. Press, 336 F.2d 1003, 1011–1012 (2 Cir.), cert. denied, 379 U.S. 965, 85 S.Ct. 658, 13 L.Ed.2d 559 (1964) ; United States v. Ross, 321 F.2d 61, 68–69 (2 Cir.), cert. denied, 375 U.S. 894, 84 S.Ct. 170, 11 L.Ed.2d 123 (1963) ; McCormick, Evidence §§ 225, 228 (1954).

ter's utterances did not violate the hearsay rule since Potter's portion of the conversation is receivable without reference to the truth of the matter asserted.[8]

---

8. In Greenblatt v. Munro, 161 Cal.App.2d 596, 326 P.2d 929, 933 (1958), the court said:

> In the instant case the statements of the bartender and female employees were not introduced for truth of the contents but only to show what was said, for what was said is part of the violation itself. It made no difference whether the female employees wanted the beverages or not as long as they did ask the witness to purchase the beverages. As the violation is the solicitation, such can only be accomplished by words.