(No. 40123.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee. *vs.*
BOBBY HERMAN WORLEY, Appellant.

*Opinion filed June 22, 1967.*

C. M. GLOSSER, of Rochelle, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and HENRY S. DIXON, State's Attorney, of Dixon, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, Bobby Herman Worley, was found guilty of burglary in a Lee County jury trial and sentenced to 5 to 15 years imprisonment. He appeals directly here contending that his confession was obtained by constitutionally impermissible methods and that the trial court erred in allowing the State to cross-examine him as to a prior conviction of an infamous crime rather than requiring the introduction of the record of his conviction into evidence. The State has confessed error as to the latter (*People* v. *Flynn,* 8 Ill.2d 116), but asks that we determine admissibility of the confession.

Defendant was arrested and taken to the Ogle County

jail at approximately 7:00 P.M. on September 28, 1965. About 3:00 P.M. the next day he signed a written statement in which he admitted participating in a burglary of the Amboy High School which had occurred earlier that month. At his trial he moved to suppress this statement. After hearing conflicting evidence as to what occurred during the 20 hours preceding the statement, the trial court denied the motion, and defendant claims this ruling was erroneous.

At the hearing defendant testified that he was not allowed to make a phone call for two hours after his arrest, and was questioned continuously until 1:00 A.M. on the 29th; that State police officers Robert Bales and Robert Wise told him that they had enough charges against him to keep him in jail for 99 years if he did not confess; that, after he awakened at 6:00 A.M. on the 29th, Sheriff William Spencer of Ogle County read a list of charges against him and Jack Van Meter, one of the arresting officers, told defendant that he did not need an attorney; that he had been told the same thing once during the preceding evening; that he was informed he could get out on bond if he signed a confession; that he procured an attorney at noon on the 29th and was told by him that if he signed the confession the attorney would get him out on probation and that the attorney refused to take his case unless he agreed to plead guilty and that he did not make the statements in the confession he eventually signed. He also testified that, when finally allowed to make a phone call on the evening of the 28th, he called his brother to get him a lawyer, but that his brother was unable to get him one that evening. It is apparent, however, from the testimony of the brother that he did not attempt to contact a lawyer at all until the next day. Defendant testified that during the evening of the 28th, he complained to Robert Bales that he was suffering from back pains and asked him if he could walk around, which request was granted.

Richard Ackerson, who was also arrested on the 28th

and interrogated along with the defendant, testified that he and the defendant were awakened at 6 :00 A.M. on the 29th. He said both had been questioned until after midnight on the evening of the arrests but that, during the time he was present with defendant on the 28th, he did not hear anyone tell defendant that he did not need an attorney or that there were enough charges against him to keep him in jail for 99 years. Ackerson and Ackerson's wife both corroborated defendant's testimony that defendant was told he would not be released on bond unless he confessed.

Defendant's wife testified that after her husband's arrest on the evening of the 28th and again at 8 :00 A.M. on the 29th, she attempted to see her husband, but was refused admission on the ground that interrogation of him was incomplete. On the latter occasion she said she was told to come back at any time after 8 :00 A.M. and returned at 1 :00 P.M. at which time her husband asked her to get him a lawyer. She then apparently obtained the attorney who defendant claims told him that he would not take the case unless defendant agreed to plead guilty.

Sheriff Spencer testified that, at 7 :00 P.M. on the 28th, defendant was advised of his constitutional rights and given the opportunity to call an attorney. He said interrogation of defendant continued off and on until about midnight and that defendant was again interviewed about 11 :00 A.M. the next day. He stated defendant supplied the information contained in his statement. Robert Bales testified that on the evening of the 28th he told defendant of the charge against him and that defendant said he did not want to talk until he saw an attorney. Officer Bales also testified that he informed defendant of his right to make a phone call and that defendant responded that he had already called someone to get him an attorney. Officer Bales further stated that, at about 1 :30 P.M. on the 29th, Sheriff Spencer asked defendant and Ackerson if they wanted to make statements. He said that when they responded affirmatively the sheriff told

them that they had better call their attorney, but they said they wanted to go ahead with their statements.

Defendant's argument that his confession should not have been admitted into evidence is based upon the contention that he was held in custody and questioned for several hours without being allowed to obtain an attorney despite repeated requests that he be permitted to do so, citing *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977. His physical condition throughout the period of detention is also mentioned. Since defendant's trial occurred in April, 1966, the principles announced in *Escobedo,* as interpreted by us in *People* v. *Hargraves,* 31 Ill.2d 375, are controlling. We there interpreted *Escobedo* that, if a defendant is not advised of his constitutional rights and requests and is denied the assistance of counsel, his subsequent confession is inadmissible as evidence against him. This, however, does not assist defendant for there is here uncontradicted evidence that he was advised of his constitutional rights including his right to counsel, the nature of the charges and that anything he said could be used against him. Moreover, there is absolutely no evidence, other than the claimed denial of the use of the phone, to support defendant's claims that he was not allowed to obtain counsel despite repeated requests for such assistance. Neither of the two such requests of which there is evidence were made to any of the police officers, the first being made to his brother on September 28 and the other to defendant's wife the following day. The fact that his brother did nothing that night is clearly not chargeable against the State, nor is the fact that the attorney secured by his wife refused to represent him unless he agreed to plead guilty, for the strict rules of *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, are inapplicable here. (*Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882; *People* v. *Jackson,* 35 Ill.2d 162.) While defendant claims that he was denied the use of a phone for two hours after being taken to the Ogle County jail, this assertion is in

direct conflict with the testimony of Sheriff Spencer and presented a factual question which the trial court could and did resolve unfavorably to defendant.

The facts that defendant had no attorney present during his interrogation, although he desired one, was questioned for several hours—precisely how long being disputed—and had a painful back condition are relevant in determining the voluntariness of his confession. They do not, however, necessarily compel a finding of involuntariness. There was substantial evidence to support the trial court's finding that the confession was voluntarily made. Except for the mention of defendant's back problem to Officer Bales, there is no evidence that any of those present during his interrogation had any knowledge of its existence, and it cannot be said that the officers took advantage of defendant's physical condition to coerce him into making a statement. Having carefully examined the record herein, we conclude that the trial court's finding is not contrary to the manifest weight of the evidence, especially when consideration is given to the undisputed evidence in the record that defendant waived his right to counsel just before he gave his statement. *People* v. *Ackerson*, 37 Ill.2d 117; *People* v. *Joe*, 31 Ill.2d 220, 224.

Having found defendant's confession admissible under the rules in force at the time of his trial, but that he is otherwise entitled to a new trial, we must now decide whether the admissibility of his confession at his retrial is subject to the more stringent conditions of *Miranda* v. *Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694. The answer to this question depends upon the intent of the Supreme Court as indicated in *Johnson* v. *New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882, (see, also, *Tehan* v. *United States ex rel. Shott*, 382 U.S. 406, 15 L. Ed. 2d 453; *Linkletter* v. *Walker*, 381 U.S. 618, 14 L. Ed. 2d 601,) in which the Court decided that *Miranda* is only to be applied prospectively from the date it was decided—June 13, 1966.

While the parties have cited no case considering whether the Supreme Court intended *Miranda* to apply to retrials occurring after June 13, 1966, of cases originally tried prior thereto, our research indicates several courts have considered the question. Delaware (*Jenkins* v. *State*, cited in 35 Law Week 2721) and New York (*People* v. *LaBelle*, 277 N.Y.S.2d 847) and held *Miranda* inapplicable to such retrials. Conversely, in Arizona (*State* v. *Brock*, 102 Ariz. 168, 416 P.2d 601) and Wisconsin (*State* v. *Shoffner*, 31 Wis. 2d 412, 143 N.W.2d 458) divided courts have applied *Miranda* in such situations. In *Gibson* v. *United States* (5th cir.), 363 F.2d 146, the court ruled that *Miranda* does apply, saying: "The 'guidelines' suggested by the Chief Justice [in *Miranda*] were not available at the time of [the original] trial and we see no reason why those principles should not be applied on the new trial of this cause. *Johnson* * * * would appear to support this view." (363 F.2d at 148.) This language is scarcely convincing and, for the reasons discussed below, we reach the opposite conclusion.

In *Johnson*, the court stated its holding as to the applicability of *Miranda* in two different ways. It first said that "Miranda applies only to cases in which the trial began after the date of our decision one week ago." (384 U.S. 719, 721, 16 L. Ed. 2d 882, 885.) Later in the opinion it restated this holding as follows: "Miranda should apply only to cases commenced after * * * [it was] announced." (384 U.S. 719, 733, 16 L. Ed. 2d 882, 892.) If the second statement of the rule had been the only one employed, it would have been quite clear to us that the court intended that *Miranda* apply only where the *original* trial in a case commenced or commences after June 13, 1966, because a retrial is not ordinarily thought of as the "commencement" of a case. (See Ill. Rev. Stat. 1965, chap. 38, par. 3—7(c) ; *United States* v. *Tateo*, 377 U.S. 463, 465, 12 L. Ed. 2d 448, 450; *People* v. *Woodward*, 394 Ill. 433, 435.) However, it is arguable that, by use of the word

"trial" in the first statement of the rule, the court demonstrated its intent that *Miranda* apply to *all* trials occurring after it was decided, and thus included retrials, even though the original trial was completed long before June 13, 1966.

Since the language employed in the statement of the *Johnson* rule is inconclusive, in our opinion the intention of the court may best be found by examining the reasons for the rule. The court listed three factors which entered into its decision: the purpose for announcing new standards in *Miranda,* the reliance placed upon the pre-*Miranda* rules, and the seriously disruptive effect on the administration of justice of a decision that *Miranda* apply retroactively. Finding that the integrity of the fact-finding process is not as substantially improved by *Miranda* as it has been by others of its decisions, that the pre-*Miranda* rules had been relied on by law enforcement officers to obtain confessions which are inadmissible in post-*Miranda* cases, and that making *Miranda* retroactive would seriously disrupt administration of our criminal laws, the court decided against applying *Miranda* retroactively. While the disruptive effect upon our criminal laws would not be as great if we follow *Gibson* as it would have been if the Supreme Court had held that *Miranda* applied retroactively, because retrials are not required in all pre-*Miranda* decisions in which confessions are involved, the presence of a disrupting effect similar to that with which the court was concerned in *Johnson,* as well as a consistent thrust from each of the other two criteria, leads us to conclude that the Supreme Court did not intend that *Miranda* apply to retrials in cases such as the instant one. The pre-*Miranda* and pre-*Escobedo* rules making inadmissible coerced confessions, as well as *Escobedo*, were available to protect the integrity of the fact-finding process in defendant's case, so that holding *Miranda* applicable to his retrial would affect no significant improvement therein. Law enforcement officers placed identical reliance on the pre-*Miranda* rules to obtain confessions in all cases which

commenced prior to June 13, 1966, and the fact that a retrial is ordered in some of these cases in no way alters this reliance.

Our interpretation of the Supreme Court's intent in *Johnson* is reinforced by the fact that the court there made *Miranda* applicable only to cases commencing subsequent to June 13, 1966, expressly excluding those in which direct appeals were pending at the time *Miranda* was announced. This was in direct contrast to its action in *Linkletter* v. *Walker,* 381 U.S. 618, 14 L. Ed. 2d 601, in which the court, while declining to apply *Mapp* v. *Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, retroactively, held it applicable to *all* cases in which the State court decision had not become *final* prior to announcement of *Mapp.* Also of some significance is the statement in *Johnson* (384 U.S. at 732, 16 L. Ed. 2d at 892) that *"Future defendants* (emphasis ours) will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test." We therefore hold that *Miranda* is inapplicable to retrials in cases which were originally tried prior to June 13, 1966.

Because of the confessed error in cross-examining defendant as to the prior conviction, the judgment of the circuit court of Lee County is reversed and the cause remanded for a new trial.

*Reversed and remanded.*