STATE OF NORTH CAROLINA v. LEWIS
No. 250

(Filed 20 November 1968)

1. Habeas Corpus § 1—    purpose of writ of habeas corpus ad subjiciendum

The office of the writ of *habeas corpus ad subjiciendum* is to give a person restrained of his liberty an immediate hearing so that the legality of his detention may be inquired into and determined.

2. Habeas Corpus § 2—    determination of legality of restraint

The sole question for determination upon habeas corpus hearing for alleged unlawful imprisonment is whether petitioner is then being unlawfully deprived of his liberty.

3. Habeas Corpus § 4—    appellate review

Except in cases involving the custody of minor children, G.S. 17-40, no appeal lies from a habeas corpus judgment, the remedy, if any, being by petition for a writ of *certiorari* which is addressed to the sound discretion of the appellate court.

4. Habeas Corpus § 2;    Criminal Law § 40—    finding as to identity in prior habeas corpus proceeding

A finding by the court in a habeas corpus proceeding that petitioner is in fact the person charged in the indictment has legal significance only as a basis for the court's decision that petitioner is not entitled to his immediate release from custody, but it has no significance in determining whether defendant is guilty of the crime charged in the indictment.

5. Criminal Law § 24— plea of not guilty

. . Defendant's plea of not guilty puts in issue every essential element of the crime charged and places the burden on the State to prove beyond a reasonable doubt all essential elements of the crime charged, including the identity of the person on trial as the person named in the indictment.

6. Judgments § 37; Constitutional Law § 29; Criminal Law §§ 35, 40— identity of defendant as person indicted — finding in prior habeas corpus hearing — right to jury trial on question of identity

A finding by the court in a habeas corpus proceeding at which defendant was awarded a new trial that defendant is in fact the person named in the indictment is not res judicata as to that question upon defendant's retrial, and the court's refusal at the retrial to admit evidence offered by defendant which tended to show that he is not the person named in the indictment constitutes prejudicial error, defendant being entitled as of right to a jury trial as to every essential element of the crime charged, including the question as to his identity.

7. Criminal Law § 75— applicability of Miranda — confession obtained prior to June 13, 1966

Miranda v. Arizona, 384 U.S. 436, does not apply to confessions obtained prior to the date of that decision, June 13, 1966, when offered at trials or retrials beginning thereafter, where law enforcement officers relied upon and complied with constitutional standards applicable at the time the confessions were made.

8. Criminal Law §§ 48, 73, 79— statements of accomplice made in defendant's presence

Statements of an accomplice made in defendant's presence which incriminated defendant are incompetent as hearsay where defendant verbally assented thereto and stated to officers in detail both before and after the accomplice made the statements all facts included in such statements, there being no implied admission by silence since defendant did not remain silent, and there being no necessity for the admission of the statements to explain the significance of defendant's assent thereto since defendant made the same statements to the officers.

9. Assault and Battery §§ 11, 16— secret assault — felonious assault

An indictment for malicious secret assault and battery based on G.S. 14-31 which contains no allegation that the victim of the assault was seriously injured is insufficient to support a conviction of felonious assault as defined in G.S. 14-32.

LAKE, J., concurring in part and dissenting in part.

HIGGINS, J., joins in concurring and dissenting opinion.

ON writ of *certiorari* to the Court of Appeals.

Defendant was tried at the October 1967 Criminal Session of Nash Superior Court before Morris, Emergency Judge, and a jury, on an indictment returned at August 1955 Term, which charged that

*Jessie B. Lewis,* on December 28, 1954, "feloniously and wilfully did in a secret manner, maliciously commit assault and battery with a deadly weapon to wit: a piece of iron upon one H. R. Bailey by waylaying or otherwise with intent to kill the said H. R. Bailey. . . ."

The only admitted evidence was that offered by the State. It was sufficient to support the verdict. Evidence offered in behalf of defendant, referred to in the opinion, was excluded.

The jury found defendant "guilty of secret assault with a deadly weapon, as charged in the bill of indictment." Judgment imposing a prison sentence of ten years, with a credit of four months and sixteen days for time served under prior sentence(s), was pronounced. Upon defendant's appeal, the Court of Appeals found no error. 1 N.C. App. 296, 161 S.E. 2d 497. On August 23, 1968, on defendant's petition, *certiorari* was granted.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*

*Fields, Cooper & Henderson for defendant appellant.*

BOBBITT, J.

At his trial at October 1967 Criminal Session, defendant contended, as he had contended at a *habeas corpus* hearing before Judge Cowper on February 13, 1967, that he was not Jessie B. Lewis.

At August 1955 Term, Jessie B. Lewis had pleaded *nolo contendere* to the indictment. Judgment imposing a prison sentence of ten years was pronounced. He escaped. Defendant was brought or returned to prison in North Carolina in 1965. On January 12, 1967, under the name, "Harold B. Richardson, M.D.," defendant filed a petition for a writ of *habeas corpus*. At the *habeas corpus* hearing, defendant did not attack the 1955 indictment of Jessie B. Lewis nor the State's right to imprison Jessie B. Lewis. He sought immediate release from custody on the ground he was not Jessie B. Lewis. Evidence as to defendant's identity was offered by the State and by defendant. Judge Cowper resolved the disputed *question of fact* by finding "that Jessie B. Lewis and Dr. Harold B. Richardson are one and the same person." Based on this finding of fact, Judge Cowper denied defendant's petition for immediate discharge from custody.

At the *habeas corpus* hearing, it came to Judge Cowper's attention that Jessie B. Lewis had not been represented by counsel at August 1955 Term. Thereupon, Judge Cowper vacated the plea and

judgment entered at August 1955 Term (and also pleas and judgments in other cases involving Jessie B. Lewis), and ordered that defendant be held for trial on the 1955 indictment of Jessie B. Lewis.

It is noted that an order entered by Judge Morris, which quotes from Judge Cowper's order of February 13, 1967, is our source of information concerning the matters set forth in the preceding paragraph. The record before us does not contain the minutes of the proceedings at August 1955 Term nor the record in the *habeas corpus* proceedings.

At his trial at October 1967 Criminal Session, after the State had rested its case, defendant offered witnesses whose testimony, which was taken in the absence of the jury, tended to show they had known Jessie B. Lewis and that the person on trial was not Jessie B. Lewis. The court excluded this proffered testimony on the ground the finding previously made by Judge Cowper that defendant was Jessie B. Lewis, the person charged in the 1955 indictment, constituted *res judicata* as to the identity of the person on trial. Defendant excepted to and assigned as error the court's said ruling.

**[1-3]** The writ returnable before Judge Cowper was a writ of *habeas corpus ad subjiciendum*, 25 Am. Jur., Habeas Corpus § 4. Aptly described as "the great and efficacious writ in all manner of illegal confinement," 3 Blackstone Commentaries 131, it is guaranteed by Article I, Section 18, of the Constitution of North Carolina. *State v. Herndon*, 107 N.C. 934, 12 S.E. 268. The office of this "most celebrated writ in the English law," 3 Blackstone Commentaries 129, "is to give a person restrained of his liberty an immediate hearing so that the legality of his detention may be inquired into and determined." 39 C.J.S., Habeas Corpus § 4. "The sole question for determination upon *habeas corpus* hearing *for alleged unlawful imprisonment* is whether petitioner is then being unlawfully deprived of his liberty." *In re Renfrow*, 247 N.C. 55, 59, 100 S.E. 2d 315, 317, and cases cited. Accord: *In re Burton*, 257 N.C. 534, 540, 126 S.E. 2d 581, 586. Except in cases involving the custody of minor children, G.S. 17-40, no appeal lies from a judgment rendered on return to a writ of *habeas corpus*. *In re Steele*, 220 N.C. 685, 687, 18 S.E. 2d 132, 134, and cases cited; *In re Renfrow, supra*. The remedy, if any, is by petition for writ of *certiorari*, addressed to the sound discretion of the appellate court. *In re Lee Croom*, 175 N.C. 455, 95 S.E. 903.

**[4]** The finding of fact made by Judge Cowper in the *habeas corpus* proceedings had legal significance only as a basis for his decision that defendant was not then entitled to immediate release from custody. It has no significance in determining whether defend-

ant is guilty of the crime charged in the 1955 indictment. Assuming valid process and sufficient accusation, the prisoner is not entitled to discharge if *probable cause* is shown for his confinement pending trial. *State v. Herndon, supra.*

Whether defendant, if the plea of Jessie B. Lewis and the judgment pronounced thereon had not been vacated, would have been entitled, in the *habeas corpus* proceedings or otherwise, to have the controverted question as to his identity decided by a jury, is not presented. Judge Cowper vacated the plea and judgment.

[5]     At October 1967 Session, defendant was tried on the 1955 indictment. His plea of not guilty put in issue *every essential element of the crime charged. State v. Cooper,* 256 N.C. 372, 381, 124 S.E. 2d 91, 97. The burden was on the State to prove beyond a reasonable doubt that defendant, the person on trial, was in fact Jessie B. Lewis, the person indicted, and all other essential elements of the crime charged. *State v. Logner,* 269 N.C. 550, 553, 153 S.E. 2d 63, 66; *State v. Clyburn,* 273 N.C. 284, 292, 159 S.E. 2d 868, 873.

[6]     Article I, Section 13, of the Constitution of North Carolina provides: "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful persons in open court. The Legislature may, however, provide other means of trial, for petty misdemeanors, with the right of appeal." A statute (Chapter 23, Public Laws of 1933, later codified as § 4636(a) of the N. C. Code of 1935) which permitted a defendant, by pleading *nolo contendere* to a felony charge, to waive a jury trial and be tried by the judge, was held unconstitutional as violative of Article I, Section 13. *State v. Camby,* 209 N.C. 50, 182 S.E. 715. In the cited case, Stacy, C.J., quotes with approval from the opinion of Hoke, J. (later C.J.), in *State v. Wells,* 142 N.C. 590, 55 S.E. 210, as follows: "Two decisions of this Court — *S. v. Stewart,* 89 N.C. 564; *S. v. Holt,* 90 N.C. 749 — have held that in the Superior Court, on indictment originating therein, trials by jury in a criminal action could not be waived by the accused." Defendant was entitled as of right to a jury trial as to *every* essential element of the crime charged, including the question as to his identity.

The ruling of the trial judge excluding the testimony proffered by defendant was approved by the Court of Appeals. In our view, the texts and decisions cited do not warrant this conclusion. The cited decisions are discussed below.

Analysis of *State ex rel. Cacciatore v. Drumbright,* 116 Fla. 496, 156 So. 721, 97 A.L.R. 154, discloses the following: One Joe Cac-

ciatore "was tried in the municipal court of Tampa, upon a docket charge which ineffectually attempted to allege a violation of City Ordinance No. 455-A." The judge overruled his motion to quash, found the defendant guilty and pronounced judgment. However, the Circuit Court, in a *habeas corpus* proceeding, ordered the defendant discharged from custody on the ground the accusation on which the defendant was tried, convicted and sentenced "did not state an offense against either the City of Tampa or the State of Florida." "Subsequently, another docket charge was entered in the municipal court which . . . sufficiently charge(d) the defendant with certain acts which (did) constitute a violation of said Ordinance 455-A." The action under consideration was instituted by Cacciatore in the Circuit Court to obtain a writ of prohibition. Alleging former jeopardy, he prayed that the judge of the Tampa Municipal Court be prohibited from proceeding with the second prosecution. The Circuit Court dismissed the action. When affirming the judgment, the Supreme Court of Florida, in opinion by Brown, J., said: "(I)n *habeas corpus* proceedings, the general rule in most jurisdictions is that an order or judgment *discharging* a person in such proceedings is conclusive in his favor that he is illegally held in custody and is *res judicata* of all issues of law and fact necessarily involved in that result, and he cannot again be arrested for the same cause; that is, *upon the same warrant, indictment, or information which was therein held illegal.*" (Our italics.) The statement from 25 Am. Jur., Habeas Corpus § 157, quoted in the opinion of the Court of Appeals, is in essentially the same words used by Brown, J., in the Florida case. The opinion of Brown, J., continues: "While it usually terminates the pending proceeding against the petitioner, it does not necessarily prevent the institution of a subsequent prosecution against him under proceedings which are legal and sufficient and which remove the illegalities, or supply the defects, on account of which the order or discharge was granted."

*Petition of Moebus,* 74 N.H. 213, 66 A. 641 (1907), referred to by the Court of Appeals, and the prior decision, *Petition of Moebus,* 73 N.H. 350, 62 A. 170 (1905), relate to the following factual situation: In 1865 one Mark Shinborn was tried and convicted of a felony in New Hampshire and sentenced to imprisonment for ten years. Committed to prison on February 27, 1866, he escaped December 3, 1866, and fled from the State. In 1900, the prisoner, a resident of New York, was arrested in that State. He was brought into New Hampshire upon a requisition issued by its Governor. Although he asserted he was Henry E. Moebus, not Mark Shinborn, he refused to litigate separately an issue as to his identity. He asserted his impris-

onment in New Hampshire was unlawful on the ground "he was lawfully entitled to a hearing before a competent court within (New Hampshire) prior to his commitment to prison," and that, upon denial of such hearing (trial), he was entitled to be liberated. In the 1905 decision, his original petition was denied. Speaking for the Supreme Court of New Hampshire, Parsons, C.J., said: "Being under sentence for felony and unlawfully at large, Shinborn could lawfully be arrested and returned to imprisonment, even by a private person, without warrant. *State v. Holmes,* 48 N.H. 377. The foundation of the petitioner's claim to a trial before his committal to prison rests upon the contention that he is not Shinborn. If he is Shinborn, no wrong has been done him. *If he is not Shinborn, he was illegally committed and is illegally confined. He may be entitled now to a trial of that question, if none has been had. As he declines to ask for such trial, and refuses to contest the issue if raised by the state, no ground of error appears.* As heretofore said, his refusal to litigate the question of his identity is an admission that he is Shinborn, and it follows that he is legally confined in the state prison, unless his term of imprisonment has expired." (Our italics.) In the 1907 decision, a second petition, which contains substantially the same allegations as the first, was denied (1) on the grounds on which the first petition was denied, and (2) on the further ground that it attempted to present again questions already decided adversely to petitioner in the 1905 decision.

[6]    Testimony proffered by defendant, which tended to show he was not Jessie B. Lewis, the person charged in the 1955 indictment, was competent and should have been admitted. The ruling of the trial judge excluding this proffered testimony, and the decision of the Court of Appeals approving this ruling, were erroneous. On this account, defendant is entitled to a new trial.

We turn now to questions relating to the competency of portions of the testimony of Sheriff G. O. Womble.

The State's evidence, in which defendant is identified as Jessie B. Lewis, consisted of the testimony of H. Reese Bailey, Fred L. Wood and G. O. Womble. Bailey, then assistant county jailer, and Wood, then deputy sheriff, testified as witnesses to what occurred in the Nash County Jail on January 28, 1955, on the occasion Bailey was assaulted. Sheriff Womble testified to the escape of Lewis and of one Dock Evans, both prisoners, from the Nash County Jail on January 28, 1955; to their arrest on January 31, 1955; to their return to and reconfinement in the Nash County Jail; to statements made to him by Lewis before and after his return and reconfinement;

and to statements made by Evans in the presence of Lewis in jail after their return and reconfinement.

[7] Defendant assigned as error the admission, over his objections, of Sheriff Womble's testimony as to statements made by Lewis and as to statements made by Evans.

Sheriff Womble's testimony tends to show: After the arrest of Lewis and Evans on January 31, 1955, he talked with Lewis, first at the police station at Rocky Mount and later after the reconfinement of Lewis in the Nash County Jail. Lewis told him in substance that, on January 28, 1955, while a prisoner, he had struck Bailey on the head with a piece of iron, knocking him down; that he had dragged Bailey into the bullpen and locked the door; and that, with Bailey's keys, he unlocked an outer door through which he and Evans, a fellow-prisoner, escaped. After Lewis made these statements, he (Sheriff Womble) talked with Evans and Lewis in the Nash County Jail. Evans then told him substantially what Lewis had previously told him with reference to what happened on January 28, 1955. On this occasion, after Evans had made these statements, Lewis told him the statements made by Evans were correct. Thereupon, Lewis repeated the statements he had made prior to the Sheriff's conversation with both Lewis and Evans in the Nash County Jail.

Evans did not testify at the trial at October 1967 Criminal Session. Sheriff Womble testified he did not know where Dock Evans was at that time — that he had not "seen him in years."

The trial judge, in the absence of the jury, conducted a *voir dire* examination and made the findings of fact set out below.

With reference to the portion of Sheriff Womble's testimony relating to statements made to him by Lewis, the trial judge found as a fact "that the statements made to the sheriff by the defendant were freely, voluntarily, knowingly and intelligently made, without any threat, inducement, reward or hope of reward to the defendant, and after he had been advised of his constitutional rights with reference to any statement he might make being used against him."

With reference to the portion of Sheriff Womble's testimony relating to statements made by Evans, the trial judge found as a fact "that the conversation about which the sheriff was asked, which he had with Dock Evans in the presence of the defendant, was made under such circumstances and was of the type conversation, particularly the statement made to the sheriff by Dock Evans in the presence of the defendant, were such as to call for an answer on the part

of the defendant, and the court rules that the conversation between the sheriff and Dock Evans in the presence of the defendant is competent and admissible against the defendant."

It is clear Sheriff Womble's testimony as to statements made by Evans was incompetent unless his testimony as to statements made by Lewis was competent. This is conceded by the Attorney General. Hence, we consider first whether the testimony as to incriminating statements made by Lewis was competent.

The testimony heard on *voir dire* was sufficient to support the findings of the trial judge to the effect Lewis voluntarily made the statements attributed to him after he had been advised of his constitutional rights in the respects set forth. However, this testimony shows the warnings given Lewis with reference to his constitutional rights fell short of certain of the requirements established and set forth in *Miranda v. Arizona,* 384 U.S. 436, 16 L. ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R. 3d 974, decided June 13, 1966.

The Court of Appeals, in accord with its decision in *State v. Branch,* 1 N.C. App. 279, 161 S.E. 2d 492, held *Miranda* did not apply to statements made by Lewis in 1955; and that the trial judge, based upon his findings as to full compliance with the constitutional standards applicable in 1955, properly admitted Sheriff Womble's testimony as to Lewis's statements.

Decisions in other jurisdictions, based largely upon the stress placed upon particular words and phrases in the opinion of Mr. Chief Justice Warren in *Johnson v. New Jersey,* 384 U.S. 719, 16 L. ed. 2d 882, 86 S. Ct. 1772, decided June 20, 1966, are in sharp conflict. Those decided prior to *State v. Branch, supra,* are discussed by Brock, J., in his opinion for the Court of Appeals. Since there is to be a new trial, this Court deems it appropriate to rule definitively as to whether, at that trial, the admissibility of testimony as to statements made by Lewis while in custody is to be determined with reference to the requirements of *Miranda* or with reference to the constitutional standards applicable on or about January 31, 1955, when the statements were made.

Decisions holding testimony that a defendant's in-custody confession is not admissible in the absence of full compliance with *Miranda* when offered in trials or retrials begun after June 13, 1966, include the following: *Guyette v. State,* 438 P. 2d 244 (Nev.) ; *United States v. Vanterpool,* 394 F. 2d 697 (2d Cir.) ; *Groshart v. United States,* 392 F. 2d 172 (9th Cir.) ; *Smith v. State,* 210 So. 2d 826 (Ala.) ; *Evans v. United States,* 375 F. 2d 355 (8th Cir.) ; *Creech v. Commonwealth,* 412 S.W. 2d 245 (Ky.) ; *Amsler v. United States,* 381

F. 2d 37 (9th Cir.); *People v. Doherty*, 59 Cal. Rptr. 857, 429 P. 2d 177; *Dell v. State*, 231 N.E. 2d 522 (Ind.); *State v. McCarther*, 197 Kan. 279, 416 P. 2d 290; *Gibson v. United States*, 363 F. 2d 146 (5th Cir.); *Thomas v. State*, 3 Md. App. 101, 238 A. 2d 558; *Government of Virgin Islands v. Lovell*, 378 F. 2d 799 (3d Cir.); *State v. Shoffner*, 31 Wis. 2d 412, 143 N.W. 2d 458; *State v. Brock*, 101 Ariz. 168, 416 P. 2d 601; *State v. Ruiz*, 49 Haw. 504, 421 P. 2d 305. (Note: The last four cases cited do not refer to Johnson.)

Decisions holding testimony that a defendant's in-custody confession made prior to June 13, 1966, is admissible in retrials begun after June 13, 1966, where there was full compliance with the constitutional standards applicable when the confession was made, include the following: *People v. Sayers*, 22 N.Y. 2d 571, 240 N.E. 2d 540; *Murphy v. State*, 426 S.W. 2d 509 (Tenn.); *Boone v. State*, 3 Md. App. 11, 237 A. 2d 787; *State v. Branch, supra; State v. Vigliano*, 50 N.J. 51, 232 A. 2d 129; *Jenkins v. State*, 230 A. 2d 262 (Del.); *People v. Worley*, 37 Ill. 2d 439, 227 N.E. 2d 746; *Commonwealth v. Brady*, 43 Pa. Dist. & Cnty. Rpts. 2d 325.

Articles and comments published since Johnson, in which the subject under consideration is discussed, include the following: Schaefer, *The Control of "Sunbursts"; Techniques of Prospective Overruling*, 22 Record of N.Y.C.B.A. 394 (1967); 25 Wash. and Lee L. Rev. 108 (1868); 19 S. C. L. Rev. 863 (1967); 116 U. Pa. L. Rev. 316 (1967); 18 Syracuse L. Rev. 117 (1966).

For general principles relating to retroactive or prospective operation of a new rule adopted by a court in overruling precedent, reference is made to Comment Notes (Annotations) in 14 L. ed. 2d 992-1015 and in 10 A.L.R. 3d 1371-1447, and to decisions and legal periodicals cited therein. These general principles are summarized in the Comment Note in 14 L. ed. 2d at 994 as follows:

"In the early decisions, the courts established a policy in favor of treating all overruling decisions as operating retroactively as well as prospectively, but the modern decisions have recognized *the power* of a court to hold that an overruling decision is operative prospectively only and is not even operative upon the rights of the parties to the overruling case, and it has generally been held that as a matter of constitutional law, retroactive operation of an overruling decision is neither required nor prohibited. Thus, the question whether and to what extent a new rule adopted in an overruling case will be applied retroactively is not a matter of constitutional compulsion, but a matter of judicial attitude, depending on the circumstances of

the particular situation and the nature and purpose of the particular overruling decision involved.

"The following factors are among those which have been deemed to warrant a court's complete or partial denial of retroactive operation to an overruling decision: *justifiable reliance on the overruled case;* ability to effectuate the new rule adopted in the overruling case without giving it retroactive effect; *and the likelihood that retroactive operation of the overruling decision will substantially burden the administration of justice.*" (Our italics.)

We pass, without discussion, decisions given *unlimited* retroactive operation, *e.g., Gideon v. Wainwright,* 372 U.S. 335, 9 L. ed. 2d 799, 83 S. Ct. 792, 93 A.L.R. 2d 733. We confine discussion to decisions holding the newly adopted rule overruling precedent, is to operate prospectively and not retroactively.

*Linkletter v. Walker,* 381 U.S. 618, 14 L. ed. 2d 601, 85 S. Ct. 1731, decided June 7, 1965, bears upon whether *Mapp v. Ohio,* 367 U.S. 643, 6 L. ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R. 2d 933 (1961), which overruled *Wolf v. Colorado,* 338 U.S. 25, 93 L. ed. 1782, 69 S. Ct. 1359 (1949), was to be applied retroactively or prospectively. Under the new rule adopted in *Mapp,* exclusion of evidence seized in violation of the search and seizure provisions of the Fourth Amendment was required of the States by the Due Process Clause of the Fourteenth Amendment. It was held in *Linkletter,* on *certiorari* to review a decision in federal *habeas corpus* proceedings, that a State court conviction which had become final before the decision in *Mapp* was not subject to collateral attack because of the admission of evidence at the trial that did not meet the constitutional standards of *Mapp.* Although *Linkletter* is silent with reference to the application of *Mapp* to cases then on appeal, the new rule was applied to reverse *Mapp's* conviction, and also to reverse convictions in *Fahy v. Connecticut,* 375 U.S. 85, 11 L. ed. 2d 171, 84 S. Ct. 229 (1963), and *Stoner v. Calofirnia,* 376 U.S. 483, 11 L. ed. 2d 865, 84 S. Ct. 889 (1964). In each of these cases, the search and seizure — illegal under *Mapp* — occurred prior to the decision in *Mapp.*

*Tehan v. Shott,* 382 U.S. 406, 15 L. ed. 2d 453, 86 S. Ct. 459, decided January 19, 1966, bears upon the prospective or retroactive application of *Griffin v. California,* 380 U.S. 609, 14 L. ed. 2d 106, 85 S. Ct. 1229, decided April 28, 1965. In *Malloy v. Hogan,* 378 U.S. 1, 12 L. ed. 2d 653, 84 S. Ct. 1489, decided June 15, 1964, which overruled *Twining v. New Jersey,* 211 U.S. 78, 53 L. ed. 97, 29 S. Ct. 14, and *Adamson v. California,* 332 U.S. 46, 91 L. ed. 1903, 67 S. Ct. 1672, 171 A.L.R. 1223, it was held the Fifth Amendment privilege

against self-incrimination was made applicable to the States by the Fourteenth Amendment. *Griffin* held the Self-Incrimination clause of the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." It was held in *Tehan,* on *certiorari* to review a decision in federal *habeas corpus* proceedings, that the petitioner could not attack collaterally, on account of failure to comply with the rules adopted in *Malloy* and *Griffin,* State court convictions which had become final prior to those decisions. Although *Griffin* is silent as to cases then on direct appeal, it appears that *Griffin* had been so applied in *O'Connor v. Ohio,* 382 U.S. 286, 15 L. ed. 2d 337, 86 S. Ct. 445. It is noted that the constitutional defect involved in the rule adopted in *Griffin* is quite different from the constitutional defect involved in *Mapp* and *Miranda* and *United States v. Wade,* 388 U.S. 218, 18 L. ed. 2d 1149, 87 S. Ct. 1926, and *Gilbert v. California,* 388 U.S. 263, 18 L. ed. 2d 1178, 87 S. Ct. 1951, both decided June 12, 1967, and discussed below. Since the constitutional defect referred to in *Griffin* related to an incident occurring *during* the trial, a new trial could be conducted free from such defect and without prejudice to the prosecution or defense. However, the new rules adopted in the other overruling decisions relate to matters occurring prior to trial where law enforcement officers complied fully with constitutional standards then applicable. In these instances, a subsequent prosecution is defeated or seriously impaired if the evidence is rejected on the ground the officers did not comply with new rules thereafter promulgated in the overruling decisions.

*Johnson v. New Jersey, supra,* bears upon the prospective or retroactive application of *Escobedo* and of *Miranda,* which superseded earlier decisions holding the admissibility of confession evidence was determinable on the basis of whether the confession was voluntary or coerced. At Johnson's 1959 trial in a New Jersey Court, testimony was admitted as to in-custody incriminating statements Johnson had made in 1958. Johnson's conviction became final in 1960. After *Miranda,* Johnson attacked the judgment collaterally in post-conviction proceedings on the ground his 1958 confessions had been obtained without complying with the constitutional standards first announced in *Miranda.* Johnson's asserted right to a new trial was rejected on the ground *Miranda* was to be applied prospectively and not retroactively. In addition to passing upon the question directly presented, the opinion of Chief Justice Warren states: "(T)o upset all of the convictions still pending on direct appeal which were obtained in trials preceding *Escobedo* and *Miranda* would impose an unjustifiable burden on the administration of justice. At the same

time, we do not find any persuasive reason to extend *Escobedo* and *Miranda* to cases tried before those decisions were announced, even though the cases may still be on direct appeal." Thus, in *Johnson,* the Court, *in its overruling decision,* held the rule established therein would not be applied to cases already tried and then on direct appeal.

*Stovall v. Denno,* 388 U.S. 293, 18 L. ed. 2d 1199, 87 S. Ct. 1967. decided June 12, 1967, bears upon the prospective or retroactive application of *United States v. Wade, supra,* and *Gilbert v. California, supra,* which, on direct review, had held that lineup identification testimony should be excluded if it was obtained by exhibiting an accused, in the absence of his counsel and before trial, to identifying witnesses. In *Stovall,* on *certiorari* to review a decision in federal *habeas corpus* proceedings, it was held that the petitioner could not attack collaterally a State court judgment which had become final prior to the decisions in *Wade* and in *Gilbert.* In addition, it was stated by Mr. Justice Brennan that "no distinction is justified between convictions now final, as in the instant case, and convictions at various stages of trial in direct review." Although the opinion does not deal specifically with the subject of trials or retrials begun after *Wade* and *Gilbert* were decided, the basis of decision is epitomized by Mr. Justice Brennan in these words: "We hold that *Wade* and *Gilbert* affect only *those cases* and *all future cases* which involved *confrontations* for identification purposes *conducted* in the absence of counsel *after this date."* (Our italics.)

Decisions subsequent to *Stovall,* involving trials begun after *Wade* and *Gilbert* were decided and holding that the admissibility of testimony as to identification in a lineup depends upon whether the lineup occurred before or after the decisions in *Wade* and *Gilbert* were announced, include the following: *People v. Haston,* 70 Cal. Rptr. 419, 444 P. 2d 91; *Commonwealth v. Nassar,* 237 N.E. 2d 39 (Mass.) ; *Barnes v. State,* 245 A. 2d 626 (Md. App.). Also, see *Crume v. Beto,* 383 F. 2d 36 (5th Cir.), and *United States v. Hutto,* 393 F. 2d 783 (4th Cir.).

Consideration of these overruling decisions leaves the impression the Supreme Court of the United States has not spoken definitively on the precise question now under such consideration. Pending such decision, trial courts in this jurisdiction will be guided by our decision herein.

In determining judicial policy, the opinion in *Stovall* states: "The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) *the extent of the reliance by law enforcement authorities on the old standards,* and (c) *the*

*effect on the administration of justice of a retroaoctive application of the new standards."* (Our italics.) Obviously, law enforcement officers relied on the constitutional standards applicable at the time of the search and seizure, and at the time of the confession, and at the time of the lineup. The date the trial or retrial is commenced is unrelated to whether the law enforcement officers obtained the evidence according to constitutional standards upon which they reasonably placed reliance. As stated by Justice Schaefer, of the Supreme Court of Illinois, in *The Control of "Sunbursts": Techniques of Prospective Overruling, op. cit.* at 411: "The earlier constitutional standards were relied upon, not at the moment that the trial commenced, but at the moment that the interrogation took place."

[7] In our view, *Miranda* should not and does not apply to confessions obtained prior to that decision, when offered at trials or retrials beginning thereafter, where law enforcement officers relied upon and complied with constitutional standards applicable at the time the confessions were made. We perceive a trend towards this conclusion in decisions of the Supreme Court of the United States discussed herein.

On this phase of the case, we are in accord with the decision of the Court of Appeals. The statement in *State v. Jackson,* 270 N.C. 773, 774, 155 S.E. 2d 236, 237, inconsistent with the present decision, is withdrawn. The present decision is in accord with the statement in *State v. Fox,* 274 N.C. 277, 291, 163 S.E. 2d 492, 502.

Admissibility of testimony as to statements made by Evans which incriminated Lewis is to be considered in the light of legal principles hereafter set forth.

[8] "If a statement is made in a party's presence under such circumstances that a denial would naturally and properly be expected if the statement were untrue, his silence or failure to deny is admissible against him as an implied admission." Stansbury, North Carolina Evidence, Second Edition, § 179. As to circumstances calling for such denial, see *State v. Guffey,* 261 N.C. 322, 134 S.E. 2d 619, and cases cited; *State v. Moore,* 262 N.C. 431, 137 S.E. 2d 812; *State v. Virgil,* 263 N.C. 73, 138 S.E. 2d 777. Although the quoted finding of fact relating to statements attributed to Evans incorporates certain language ordinarily used in the statement of this rule, the rule does not apply to the factual situation under consideration for the reason Lewis, according to Sheriff Womble, did not remain silent.

Assuming the incriminating statements attributed to Evans were made in Lewis's presence and that Lewis verbally assented thereto

but made no further statement, the testimony as to the statements made by Evans would be competent solely to explain the significance of Lewis's assent. The factual situation under consideration is different. According to Sheriff Womble, Lewis, both before and after the statements attributed to Evans were made, stated in detail to Sheriff Womble all facts included in the statements attributed to Evans which tended to incriminate Lewis. This being true, no necessity existed for the admission of the statements attributed to Evans in order to explain the significance of Lewis's assent thereto. Absent a sound reason for creating an exception thereto, the rule against hearsay evidence renders incompetent the testimony as to the unsworn declarations of Evans.

Since a new trial is awarded on other grounds, we need not decide whether the erroneous admission of the testimony as to statements made by Evans would constitute error of such prejudicial import as to require the award of a new trial. Whether an error is to be considered prejudicial or harmless must be determined in the context of the entire record. Suffice to say, at the next trial, if circumstances are substantially the same as those disclosed by the present record, error will be avoided by the exclusion of the testimony as to statements made by Evans.

Although not properly assigned as error on defendant's appeal to the Court of Appeals nor brought forward in defendant's brief, we deem it appropriate to call attention to the subject discussed below.

[9] The 1955 indictment on which defendant was tried is based on G.S. 14-31, which provides: "If any person shall in a secret manner maliciously commit an assault and battery with any deadly weapon upon another by waylaying or otherwise, with intent to kill such other person, notwithstanding the person so assaulted may have been conscious of the presence of his adversary, he shall be guilty of a felony. . . ." The felony described in G.S. 14-31 is often referred to as malicious secret assault and battery with a deadly weapon. The maximum punishment therefor is imprisonment for twenty years.

G.S. 14-32 provides: "Any person who assaults another with a deadly weapon with intent to kill, and inflicts serious injury not resulting in death, shall be guilty of a felony. . . ." The felony described in G.S. 14-32 is often referred to as felonious assault. The maximum punishment therefor is imprisonment for ten years.

The jurors were instructed they might return one of four possible verdicts: (1) Guilty as charged; or (2) guilty of an assault with a deadly weapon with intent to kill, inflicting serious bodily injury

not resulting in death; or (3) guilty of an assault with a deadly weapon; or (4) not guilty. Although there was ample evidence to the effect Bailey, the victim of the assault, was seriously injured, the 1955 indictment contains no allegation to this effect. Consequently, since the indictment does not charge all essentials of the crime of felonious assault as defined in G.S. 14-32, a verdict that defendant was guilty of such felonious assault could not be sustained. In this connection, see *State v. Rorie*, 252 N.C. 579, 114 S.E. 2d 233, and *State v. Overman*, 269 N.C. 453, 464, 153 S.E. 2d 44, 54, and cases cited therein. The indictment in *State v. High*, 215 N.C. 244, 1 S.E. 2d 563, contained an allegation that the victim of the assault sustained "serious damage and injury, to wit, on or about the head."

For the error indicated, the decision of the Court of Appeals is reversed and the cause is remanded to that Court with direction to award a new trial to be conducted in accordance with the legal principles stated herein.

Error and remanded.

LAKE, J., concurring in part and dissenting in part:

I concur. in the decision that the defendant is entitled to a new trial. I also concur in all of the majority opinion except the portion of it dealing with the applicability to this case of the decision of the Supreme Court of the United States in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and with the admissibility of the testimony of Sheriff Womble as to the statements made to him by the defendant and by Evans.

It is my view that the *Miranda* rule does apply to this case and, consequently, the testimony of Sheriff Womble as to the statements made to him by the defendant was incompetent. As the majority; opinion points out, this compels the conclusion that the testimony of the sheriff as to statements made to him by Evans in the presence of the defendant was also incompetent. If the defendant's express admission was incompetent by reason of the *Miranda* rule, the contemporaneous statement by Evans could not be competent as an implied admission by the defendant. The defendant having the constitutional right to remain silent throughout the interrogation by the sheriff, his failure to deny the statement by Evans could not be deemed an implied admission that the Evans statement was true. *State v. Fuller*, 270 N.C. 710, 155 S.E. 2d 286.

The majority opinion is to the effect that, though a trial be commenced after the *Miranda* decision, the admissibility in evidence at such trial of a statement made by the defendant in the course of

custodial interrogation is not affected by the *Miranda* rule, if the statement was made before the date of that decision. With this I am unable to agree. I believe that for trial courts to follow this course will result in reversals of convictions otherwise proper.

Like Justices Harlan, Stewart, White and Clark, who dissented from the *Miranda* decision, I believe the rule established by that case is unsound and the result of a misinterpretation of the Fourteenth Amendment to the Constitution of the United States. Consequently, I have no desire to see the effect of that decision enlarged, either as to the content of the rule or as to the time of its effectiveness. The merits of the *Miranda* decision are, however, not before us.

As stated in my dissenting opinion in *Rabon v. Hospital,* 269 N.C. 1, 152 S.E. 2d 485, it is my view that the judicial power does not extend to the making of a new rule of law applicable only to the future. For that reason I am unable to concur in those portions of the majority opinion which seem to imply that this Court may lawfully exercise this power, which is the very essence of the legislative power. That power is, in my opinion, denied us by Art. I, § 8, and Art. II, § 1, of the Constitution of North Carolina, but that question is not before us in this case and any such implications in the majority opinion are, at the most, dicta.

While, for like reason, it is my view that the Supreme Court of the United States has no lawful authority under the Constitution of the United States to give to an interpretation of that document by it prospective operation only, that question is not before us. The Supreme Court of the United States has ruled that it does have that authority, and its determination of that question is binding upon us, being, itself, an interpretation of the Constitution of the United States.

Assuming the Supreme Court of the United States has that authority, as we must for the purposes of this case, it is not for this Court to determine whether a decision by the Supreme Court of the United States should or should not be retroactive, or, if it be not fully retroactive, to determine when its effectiveness commences. That is a question to be determined by the Supreme Court of the United States and by no other tribunal. Unless the Supreme Court of the United States otherwise declares, its interpretations of the Constitution of the United States are retroactive and are applicable, where otherwise so, to all trials occurring thereafter, without regard to when the facts giving rise to the question arose. When the Supreme Court of the United States has otherwise declared, its declaration is conclusive of the question as to when its interpretation of

the Constitution of the United States takes effect and conclusive of the question as to which trials are to be conducted under the new rule announced by it and which are to be conducted under the former rule.

The Supreme Court of the United States has so spoken in *Johnson v. New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772, with reference to the effective date of its *Miranda* decision. Consequently, the discussion in the majority opinion, in the present case, as to principles governing determination of when a decision, which changes the law, should be declared retroactive and just how retroactive it should be, is not pertinent to the case now before us. Whether we agree with *Johnson v. New Jersey* or not, it is the authoritative answer to the question of when the *Miranda* rule took effect and determines which confessions (time-wise) are admissible and which are not. The only question for us is, What did the *Johnson* case say about this and what did the Court mean by what it said?

This is what the Court said in *Johnson v. New Jersey:*

"In this case we are called upon to determine whether *Escobedo v. Illinois* * * * and *Miranda v. Arizona* * * * should be applied retroactively. We *hold* * * * that *Miranda* applies only to cases in which the *trial began* after the date of our decision one week ago. * * *

"[R]etroactive application of * * * *Miranda* would seriously disrupt the administration of our criminal laws. It would require retrial or release of numerous prisoners found guilty by trustworthy evidence in conformity with previously announced constitutional standards. * * *

"In the light of these various considerations, we conclude that *Escobedo* and *Miranda* * * * should not be applied retroactively. The question remains whether *Escobedo* and *Miranda* shall affect cases still on direct appeal when they were decided or whether their application shall *commence with trials begun* after the decisions were announced. * * *

"All of the reasons set forth above for making *Escobedo* and Miranda nonretroactive suggest that these decisions should apply only to *trials begun* after the decisions were announced. Future defendants will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test. * * * Prospective application only to *trials begun* after the standards were

announced is particularly applicable here. * * * In these circumstances, to upset all of the convictions still pending on direct appeal which were obtained *in trials* preceding * * * *Miranda* would impose an unjustifiable burden on the administration of justice. * * *

"In the light of these additional considerations, *we conclude* that * * * *Miranda* should apply only to cases *commenced* after those decisions were announced. * * *

"The disagreements among the other courts concerning the implications of *Escobedo,* however, have impelled us to lay down additional guidelines for situations not presented by that case. This we have done in *Miranda,* and these guidelines are therefore available only to persons whose *trials had not begun as of June 13, 1966.*" (Emphasis added throughout.)

When a court says in its opinion that it "holds" a certain thing, this statement, and not the reasons given therefor, determines what that case decides. I am unable to escape the conclusion that the *Johnson* case decides that the *Miranda* rule applies to the introduction of a confession at any trial, which trial begins after the *Miranda* case was decided, 13 June 1966, irrespective of when the confession was obtained. Consequently, I cannot concur in this statement in the majority opinion in the present case:

"In our view, *Miranda* should not and does not apply to confessions obtained prior to that decision, when offered at trials or retrials beginning thereafter, where law enforcement officers relied upon and complied with constitutional standards applicable at the time the confessions were made."

Let us suppose an arrest and interrogation just prior to the *Miranda* decision. The interrogating officer did not inform the prisoner of his right to have counsel appointed, he being an indigent. The prisoner confessed in response to interrogation otherwise proper. The prisoner thereafter escaped before trial and has just been recaptured. He is now brought to trial and the confession is offered in evidence and admitted over his objection. Can there be any doubt as to what the Supreme Court of the United States would hold, assuming it adheres to its decisions in the *Miranda* and *Johnson* cases? In the language of the *Johnson* case, I can find no support for the view that the admissibility of the confession depends on when it was obtained, rather than on when the trial at which it was used commenced.

There remains for consideration the question of whether a new trial, ordered because of errors in a former trial, is indeed a new trial

or a mere continuation of the old one. Is the new trial, which gets under way long after the announcement of the *Miranda* decision, a trial "begun" before that decision was handed down merely because the case was started by an indictment returned prior to that decision and an abortive trial was then had? In my opinion the answer is obviously, "No." The old, erroneous trial is a nullity, in this respect at least.

Though the decisions of other courts could not alter the rule of the *Johnson* case as to the effective date of the *Miranda* decision, I am strengthened in my view by the fact that, according to the majority opinion in this case, a substantial majority of the decisions from other jurisdictions reach the same conclusion.

HIGGINS, J., joins in this opinion.