STATE v. CHAPMAN

[218 N.C. App. 428 (2012)]

---

STATE OF NORTH CAROLINA v. GREGORY R. CHAPMAN

No. COA11-229

(Filed 7 February 2012)

**Jurisdiction—over appeal—failure to challenge order granting relief—writ of habeas corpus**

The Court of Appeals lacked jurisdiction to hear the State's appeal from an order dismissing two counts of capital first-degree murder against defendant and the appeal was dismissed. The State failed to also challenge the order granting relief pursuant to a writ of *habeas corpus*, which concluded that the murder indictments did not properly charge any offense.

Appeal by the State from dismissal order entered 23 December 2010 by Judge Russell J. Lanier, Jr., in Duplin County Superior Court. Heard in the Court of Appeals 13 September 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel Shatz, for defendant.*

ELMORE, Judge.

## STATE v. CHAPMAN

[218 N.C. App. 428 (2012)]

The State appeals from an order dismissing two counts of capital first-degree murder against Gregory R. Chapman (defendant). Because the State failed to also challenge the order granting relief pursuant to a writ of habeas corpus, which concluded that the murder indictments did not properly charge any offense, we lack jurisdiction to hear this appeal, and we dismiss it without considering the merits.

On 26 May 2008, defendant shot Lisa Wallace once in her left upper abdomen. Wallace was nineteen weeks and four or five days pregnant with twins. The bullet did not enter Wallace's uterus. Wallace was taken to Pitt County Memorial Hospital, where she had emergency surgery; following the surgery, Wallace underwent a spontaneous abortion of both twins. Wallace survived. Following the spontaneous abortion, both twins had heartbeats, and they were each assigned an Apgar score of one; neither twin scored on the other four factors that comprise an Apgar score—respiration, color, movement, and irritability. The first twin was delivered at 4:42 p.m., weighed 336 grams, and was pronounced dead at 5:10 p.m. when his heartbeat stopped. The second twin was delivered at 4:49 p.m., weighed 323 grams, and was pronounced dead at 5:20 p.m. when her heartbeat stopped.

Certificates of live birth were issued for each twin. Death certificates were also issued, and both the death certificates and the medical examiner's report listed the immediate cause of death for each twin as "previable prematurity." The medical experts who testified at the habeas corpus hearing all agreed that a previable newborn cannot maintain life outside of the mother's womb, regardless of medical intervention. No medical expert opined that the twins were viable at their gestational age or weight.

Defendant was charged capitally with two counts of first-degree murder for the death of the twins, who were named as the victims on the indictment. He was also charged with possession of a firearm by a felon, assault with a deadly weapon with the intent to kill inflicting serious injury, and discharging a weapon into occupied property. Under the pretrial release order for the two first-degree murder charges, defendant's release was not authorized. However, under the pretrial release orders for the other three charges, bond was set at $2.5 million. On 23 November 2009, defendant applied for a writ of habeas corpus, seeking "to remove the restraint of his liberty with respect to his being held unlawfully without bond since July 2, 2008 on two charges of first degree murder." In essence, he argued that "the only criminal offense for which a defendant may be held without

bond is capital murder, and because [he] ha[d] not been properly and lawfully charged with the murder of any living person, his restraint without bond [was] illegal and unlawful." Defendant sought discharge pursuant to N.C. Gen. Stat. § 17-33 with respect to the release order for the murder charges against him and remand pursuant to N.C. Gen. Stat. § 17-35 with respect to the assault charge.

Judge Gary E. Trawick issued a writ of habeas corpus on 1 December 2009 and ordered an evidentiary hearing to resolve the issues raised by defendant in his application.

On 8 November 2010, Judge Russell L. Lanier, Jr., held the evidentiary hearing pursuant to the writ of habeas corpus. He heard testimony from a number of experts, including the obstetrician who was present and attending when the twins were delivered, the surgical pathologist who conducted the post-mortem examination of the twins, a professor of pathology who was the medical examiner in this case, the labor and delivery nurse who prepared the twins' delivery report, an expert in obstetrics and gynecology who reviewed the medical records and reports for the defense, and an expert in preventative medicine and obstetrics and gynecology. Judge Lanier found all of the witnesses to be highly credible and noted that there was no material conflict in their testimony. In addition, the State asserted that it would have called the same witnesses, with the exception of the obstetrics and gynecology expert who reviewed the medical records and reports for the defense.

At the end of the hearing, Judge Lanier concluded that the twins were never alive, under the law, and thus they could not have been murdered. Following that ruling, defendant moved to dismiss the murder charges under N.C. Gen. Stat. § 15A-954. Judge Lanier allowed the motion, and the State gave oral notice of appeal.[1]

On 28 December 2010, the trial court entered the relief order, which included twenty-five findings of fact and five conclusions of law. It concluded that the named victims in the murder indictments "did not meet any of the three requirements under the common law

---

1. At the conclusion of the hearing, both parties and Judge Lanier agreed that the case would continue on to the Court of Appeals. The prosecutor noted that the "State would be reviewing of the Court's decision either by way of a Writ of Certiorari or interlocutory appeal." Judge Lanier also made a comment about whether the motion to dismiss should be stayed until the Court of Appeals decided the issues stemming from the relief order. Based on these comments and also comments made by the Assistant Attorney General during oral argument, it appears clear that the State's decision not to challenge the relief order by filing a petition for certiorari was a deliberate one.

born-alive rule. They were not viable. They were not born alive as defined under the common-law rule. They did not die as a result of injuries inflicted upon them *in utero* prior to birth." Because the named victims in the murder indictments were not alive, they could not lawfully be the victims of any homicide offense. "As a result, the murder indictments in this case do not properly charge any offense, and they confer no jurisdiction on any court to establish conditions of pretrial release." Thus, the court concluded, defendant's "current detention without bond based on pretrial release orders denying the availability of bond on the basis that [defendant] is charged with capital offenses is unlawful under N.C. Gen. Stat. § 17-1 and [defendant] is entitled to immediate relief from this unlawful restraint." Finally, the court concluded that the appropriate remedy was "to have the no-bond pretrial release orders in the murder cases vacated, and for [defendant] to be remanded to the custody of the Sheriff of Duplin [C]ounty under the authority of the pretrial release orders in his non-capital cases, which are unaffected by this order and remain valid."

On 28 December 2010, the trial court also entered its order dismissing the murder charges. The trial court incorporated the relief order by reference and stated that its ruling in the habeas proceeding

> constitutes an adjudication in the defendant's favor of factual and legal issues that are essential to a successful prosecution in this case. In sum, this Court's ruling that the named victims do not qualify as potential homicide victims under the born-alive rule makes a successful prosecution in this case impossible.

*Sua sponte*, the trial court also "note[d] that a further implication of its ruling in the habeas proceeding is that the indictment in this case fails to charge an offense and that N.C. Gen. Stat. § 15A-954(a)(10) also applies and requires dismissal of the murder charges in this case."

The State appeals only the order dismissing the murder charges against defendant; the State did not file a petition for certiorari for this Court to review the relief order. Without question, the State has the right to appeal an order dismissing the charges against defendant under N.C. Gen. Stat. § 15A-1445(a)(1), and, also without question, the State must petition for certiorari if it wants this Court to review the relief order, *Surratt v. State*, 276 N.C. 725, 726, 174 S.E.2d 524, 525 (1970). At oral argument, the State was adamant that we need not review the relief order and it has no interest in our review of the relief order. It asserts that we can grant the relief it seeks without disturbing the relief order. At issue, then, is whether we can review the dis-

missal without also reviewing the relief order. We conclude that we cannot and that the State should have petitioned for certiorari in addition to directly appealing the dismissal order. Because we cannot review the dismissal without also reviewing the relief order, we dismiss the State's appeal. We do not address the merits.

If we were to review the dismissal and find error, this would allow the State to proceed on the murder charges against defendant. However, because the writ was never challenged and would still be in place when the State returned to its initial prosecution, imprisoning defendant on the charge of murder would be unlawful. *See* N.C. Gen. Stat. § 17-33 (2011) ("If no legal cause is shown for such imprisonment or restraint, or for the continuance thereof, the court or judge shall discharge the party from the custody or restraint under which he is held."); N.C. Gen. Stat. § 17-25 (2011) ("If any person shall knowingly again imprison or detain one who has been set at large upon any writ of habeas corpus, for the same cause, other than by the legal process or order of the court wherein he is bound by recognizance to appear, or of any other court having jurisdiction in the case, he shall be guilty of a Class 1 misdemeanor."); *see also In re Williams*, 149 N.C. 436, 437, 63 S.E. 108, 109 (1908) ("The prisoner having been discharged, no practical purpose is to be subserved in prosecuting this appeal, even if the State had such right which, it is plainly intimated in *S. v. Miller*, 97 N.C. 451[, 1 S.E. 776,] is not given the State. Proceedings in *habeas corpus*, the object of which is to release a person from illegal restraint, must necessarily be summary to be useful, and if action could be arrested by an appeal upon the part of the State, the great writ of liberty would be deprived of its most beneficial results."). These, obviously, are incompatible outcomes.

Moreover, although at common law res judicata does not attach to the *denial* of habeas relief, *Schlup v. Delo*, 513 U.S. 298, 317, 130 L. Ed. 2d 808, 829 (1995),

> in *habeas corpus* proceedings, the general rule in most jurisdictions is that an order or judgment *discharging* a person in such proceedings is conclusive in his favor that he is illegally held in custody and is *res judicata* of all issues of law and fact necessarily involved in that result, and he cannot again be arrested for the same cause; that is, *upon the same warrant, indictment, or information which was therein held illegal.*

*State v. Lewis*, 274 N.C. 438, 443, 164 S.E.2d 177, 180 (1968) (quoting *State ex rel. Cacciatore v. Drumbright*, 156 So. 721, 723 (Fla. 1934)

(alterations removed)). This rule prevents the incompatible result that stems from allowing the State to proceed on an indictment that has been held to be illegal by order of discharge upon a writ of habeas corpus without also vacating the discharge order. We must therefore dismiss the State's appeal for lack of jurisdiction.

Dismissed.

Judge MCGEE concurs.

Judge HUNTER, JR., Robert N., concurs in result only.